IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BACARDI & COMPANY LIMITED, and BACARDI U.S.A., INC., )<br><br>Plaintiffs, )<br>v. )<br>)<br>U.S. DEPARTMENT OF THE TREASURY and its Office of Foreign Assets Control, )<br><br>Defendants. ) | Case No. |

## COMPLAINT FOR INJUNCTIVE RELIEF

Mark Robeck (D.C. Bar No. 1010428)
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
350 K. Street, NW
Washington, DC 20007-5108
mrobeck@kelleydrye.com

Michael C. Lynch (*pro hac vice* forthcoming)
Damon Suden (*pro hac vice* forthcoming)
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
mlynch@kelleydrye.com
dsuden@kelleydrye.com

## INTRODUCTION

1. This action is brought against the United States Department of the Treasury (the "Treasury" or "Department") and its Office of Foreign Asset Control ("OFAC"), pursuant to the Freedom of Information Act ("FOIA" or "the Act"), to compel the production of documents sought in Bacardi & Company Limited and Bacardi U.S.A Inc.'s, ("Plaintiffs" or "Bacardi") January 29, 2016 FOIA Request No. 2016-01-157 (the "Request").

2. The Request seeks, among other things, all documents and information related to OFAC License No. CU-2015-323837-1 granted on January 11, 2016 to Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), an entity owned by the Cuban government, for the purported purpose of permitting Cubaexport to retroactively renew its HAVANA CLUB trademark registration. This action by OFAC violated well-settled United States law (and more than fifty years of U.S. foreign policy) by permitting a Cuban entity to register a trademark associated with a confiscated business and marked an abrupt and unexplained reversal of OFAC's prior decision in 2006 to deny the very same license as being inconsistent with United States foreign policy.

3. Bacardi's FOIA Request sought to get to the bottom of this ill-advised change in United States policy. But the Treasury Department and OFAC have effectively denied Bacardi's FOIA Request by failing to produce any documents for over a year and then making a so-called "initial" production of thirty-two (32) pages on March 17, 2017, only after Bacardi filed an administrative appeal. No further production of documents have been made to date.

4. The "initial" and only production of documents by Defendants contained only submissions to OFAC by Cubaexport and its outside counsel – documents that could have easily been produced a year ago. Notably, Defendants produced *no documents* reflecting communications with other agencies, such as the Patent and Trademark Office, the State

Department, or the White House – documents which surely exist and which fall within the scope of the Request.

5. Bacardi's administrative appeal was denied as premature on the grounds that OFAC had not yet issued a determination in response to Bacardi's FOIA Request. But this excuse holds no weight more than a year and a half after the Request was submitted. The excessive delay of the Department and OFAC have created a constructive denial of Bacardi's Request and judicial relief is warranted.

## JURISDICTION AND VENUE

6. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i).

7. Venue is proper pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

8. Plaintiff Bacardi & Company ("BACO") is a Lichtenstein company having its principal of business at 267 route de Meyrin, 1217 Meyrin, Switzerland. BACO, through its affiliates, licensees, and distributors, produces and markets distilled spirits worldwide.

9. Plaintiff Bacardi U.S.A., Inc. ("Bacardi U.S.A.") is a Delaware corporation having its principal place of business at 2701 S. Le Jeune Road, Coral Gables, Florida 33134. Bacardi U.S.A. owns all the requisite federal and state permits to import rum and other distilled spirits into the United States and to sell such distilled spirit products to licensed wholesalers throughout the United States wherever the sale of distilled spirits is permitted by law. Bacardi U.S.A. is the exclusive distributor in the continental United States of BACARDI, CASTILLO, and HAVANA CLUB trademarked rums. Bacardi U.S.A. and BACO will henceforth collectively be referred to as "Bacardi."

10. Defendant Treasury Department is an executive department of the United States federal government. Its office is located at 1500 Pennsylvania Avenue, NW, Washington, D.C. 20220.

11. Defendant OFAC is an agency of the Treasury Department that operates under the Office of Terrorism and Financial Intelligence. OFAC is also located at 1500 Pennsylvania Avenue, NW, Washington, DC 20220.

## BACKGROUND

12. José Arechabala, S.A. ("JASA"), a Cuban corporation was founded in 1878 and privately owned by members of the Arechabala family. JASA was organized to carry out the Arechabalas' business as a *sociedad anónima* under the laws of the Republic of Cuba, with its principal offices in Cardenas.

13. In the early 1930s, JASA adopted and began to use the trademark HAVANA CLUB for its rum, which it produced principally for export to the United States. JASA used the mark in commerce in the United States at least as early as 1934. In 1935 and 1936, the U.S. Patent and Trademark Office ("PTO") issued registrations for the HAVANA CLUB and HAVANA CLUB and Design trademarks, respectively.

14. JASA exported its rum to the United States until 1960 when armed Cuban revolutionary soldiers under the direction of Fidel Castro ("Castro"), forcibly seized all of JASA's assets. The putative Cuban government under Castro later expropriated all the assets, property, accounts, and business records of JASA for itself without compensating JASA. During the 1970s and 1980s a putative Cuban government entity, Cubaexport, sold an inauthentic version of "Havana Club" rum, primarily in Communist countries.

15. Cubaexport purported to register the HAVANA CLUB trademark, U.S. Registration No. 1,031,651, in 1976 under the Lanham Act. Despite this registration, Cubaexport has never sold any rum bearing the HAVANA CLUB mark in the United States.

16. In 1995, Bacardi and the Arechabala family entered into an agreement-in-principle for Bacardi to acquire JASA's rights to the HAVANA CLUB mark. In April 1997, JASA went through the process of voluntary corporate liquidation, by decision of its shareholders, and formed a substantially mirror-image company, Jose Arechabala International Ltd., ("JAI"). JASA conveyed to JAI all right, title, and interest in and to the HAVANA CLUB trademark worldwide, the related goodwill of the business, and certain other related assets such as JASA's secret formula for the HAVANA CLUB rum. JAI then sold to BACO all right, title, and interest in and to the HAVANA CLUB trademark worldwide and such other related assets that JAI had acquired from JASA.

17. On or about December 1996, OFAC granted License No. c-18572 to Bacardi to effectuate the transfer of the HAVANA CLUB mark from JASA to Bacardi. The license was granted in part because "no benefit will accrue to Cuba or a Cuban national based on Bacardi's acquisition of the assets and rights of JASA." Bacardi has been the lawful owner of the HAVANA CLUB mark since that time.

18. In 1994 BACO applied to register the HAVANA CLUB mark with the PTO under Serial Number 74/572,667. The application has been suspended pending resolution of Bacardi's challenge to Cubaexport's registration of the same mark under Registration No. 1,031,651.

19. Despite Bacardi's lawful ownership of the mark, in 1996, Cubaexport attempted to transfer its purported Havana Club related assets, including its rights in the HAVANA CLUB mark, to a joint venture company, Havana Club Holdings S.A. ("HCH"). HCH is fifty percent owned by Pernod Ricard, a French liquor company.

4834-7704-4554

20. That year, Cubaexport submitted a license application to OFAC to approve its attempt to transfer its purported Havana Club assets. The application failed to mention that the trademark was being transferred to an entity partially owned by non-Cubans to engage in an enterprise that would financially benefit the putative Cuban regime that had expropriated JASA's Havana Club assets without compensation.

21. OFAC initially approved the application, but upon learning of the deceit, retroactively rescinded the license and voided the transfer of the HAVANA CLUB trademark registration.

22. In 2006, Cubaexport attempted to renew the same trademark registration for which its transfer was denied by OFAC earlier, but was not authorized to pay the filing fee without a specific license from OFAC. On July 28, 2006, OFAC denied Cubaexport's license application because it would be "inconsistent with U.S. policy." Because the application was denied, the filing fee could not be paid, and the registration expired.

23. On September 29, 2006 Cubaexport commenced an action in a District of Columbia district court challenging OFAC's determinations. OFAC vigorously and successfully defended its decision through years of court proceedings. *See Empresa Cubana Exportadora De Alimentos y Productos Varios v. United States Department of Treasury, et al.*, 516 F. Supp. 2d 43 (D.D.C. 2007); 606 F. Supp. 2d 59 (D.D.C. 2009); and 638 F.3d 794 (D.C. Cir. 2011), *cert. denied*, 132 S. Ct. 2377 (2012). In one submission, dated December 21, 2006, OFAC explained that its decision to deny Cubaexport's license application was based on its consultation with the State Department regarding United States foreign policy towards the Cuban regime:

> The State Department informed OFAC that "[d]enial of the license application would be consistent with the U.S. approach toward non-recognition of trademark rights associated with confiscated property" as well as "consistent with . . . the policy of the United States to deny resources to the Castro regime." A.R. 2-3. Accordingly, "[h]aving weighed the facts and foreign policy

6

>concerns presented by this referral, the Department of State recommend[ed] that OFAC deny [Cubaexport's] application. After considering the State Department's guidance, the facts and circumstances of the case, and the implementation of section 211 in the CACR, OFAC denied the request for a specific license."

24. Following the refusal of the USPTO to renew the registration, Cubaexport appealed to the Director of the USPTO. That appeal remained pending for almost 10 years.

25. The USPTO refused to remove the cancelled mark from its register during this time.

26. On January 11, 2016, OFAC inexplicably reversed course and granted License 837-1 to Cubaexport. The License purports to authorize Cubaexport to pay the long overdue filing fee from 2006. Within two days of this decision, the USPTO granted Cubaexport's 2006 appeal and held that it could retroactively renew its mark.

27. In response to OFAC's abrupt about-face and the USPTO's extraordinary subsequent actions in exceedance of its statutory authority, Bacardi immediately sought answers.

28. One week from the renewal of the petition, on January 19, 2016, Bacardi submitted a FOIA request to the U.S. Treasury Department and its Office of Foreign Assets Control requesting the following information:

>1. All documents, communications, and files maintained by the U.S. Treasury Department or its Office of Foreign Assets Control ("OFAC"), including any communications concerning or involving the U.S. Patent and Trademark Office ("PTO"), U.S. Department of State, Executive Office of the President of the United States, the National Security Council, and/or any other third parties, including without limitation Pernod Ricard and its parents or affiliates ("Pernod"), Havana Club Holdings and its parents or affiliates ("HCH"), Havana Rum & Liquors and its parents or affiliates ("HRL"), relating to the request, issuance, or authorization of License No. CU-2015323837-1 to Empresa Cubana Exportadora de Alimentos y Productos Varios and/or its parents, subsidiaries, affiliates, divisions, or agents ("Cubaexport"), which license was issued to Cubaexport on or about January 11, 2016.

7

2. All documents, communications, and files relating to the application or request submitted by Cubaexport to the U.S. Treasury Department and OFAC on or about November 10, 2015, for a specific license relating to the renewal or maintenance of HAVANA CLUB trademark (U.S. Registration No. 1,031,651).

3. All documents, communications, and files relating to the application or request submitted by Cubaexport to the U.S. Treasury Department and OFAC on or about April 7, 2006, for a specific license relating to the renewal or maintenance of HAVANA CLUB trademark (U.S. Registration No. 1,031,651), and OFAC's subsequent denial of said application or request. All documents, communications, and files maintained by the U.S. Treasury Department or OFAC, including any communications concerning or involving the U.S. Patent and Trademark Office ("PTO"), U.S. Department of State, Executive Office of the President of the United States, the National Security Council, and/or any other third parties, including without limitation Pernod Ricard and its parents or affiliates ("Pernod"), Havana Club Holdings and its parents or affiliates ("HCH"), Havana Rum & Liquors and its parents or affiliates ("HRL"), relating to the application for renewal of U.S. Registration No. 1,031,651 to the PTO on or about December 13, 2005.

4. All documents, communications, and files maintained by the U.S. Treasury Department or its Office of Foreign Assets Control ("OFAC"), including any communications concerning or involving the U.S. Patent and Trademark Office ("PTO"), U.S. Department of State, Executive Office of the President of the United States, the National Security Council, and/or any third parties, including without limitation Pernod Ricard and its parents or affiliates ("Pernod"), Havana Club Holdings and its parents or affiliates ("HCH"), Havana Rum & Liquors and its parents or affiliates ("HRL"), relating to the HAVANA CLUB trademark (U.S. Registration No. 1,031,651) from 2004 to present.

5. All documents, communications, and files relating to Cubaexport's court action against the U.S. Treasury Department and Office of Foreign Assets Control ("OFAC") filed in the District Court for the District of Columbia in 2006 (Civ. No. 06-cv-01692) and Cubaexport's appeal brought in the United States Court of Appeals for the District of Columbia in 2009 Circuit (No. 09-5196).

6. All documents, communications, and files relating to any applications, requests or inquiries by Cubaexport, Pernod, HCH, HRL, or any third party for a license from OFAC to authorize, permit or otherwise allow the transfer or assignment

            of the HAVANA CLUB trademark (U.S. Registration No. 1,031,651), from 1997 to present.

7. All documents, communications and files relating to the bases, reasons, grounds and/or policy initiatives underlying or supporting OFAC's decision to grant License No. CU-2015-323837-1 to Cubaexport, including any communications or files concerning the Foreign Assistance Act of 1961, Trading with the Enemy Act of 1962, Cuban Democracy Act of 1992, and the Cuban Liberty and Democratic Solidarity ("LIBERTAD") Act of 1996, and/or Trade Sanctions Reform and Export Enhancement Act of 2000, and any regulations, rules, policies or guidance relating thereto.

29. On February 12, 2016, OFAC contacted counsel for Bacardi and requested that Bacardi agree to narrow the scope of the FOIA request by removing public records, court filings related to the trademark action, and attorney-client records in exchange for the documents being produced more quickly. Notwithstanding Bacardi's agreement to narrow the request by withdrawing its request for public records or documents filed with the court in cases related to the trademark action, no documents were forthcoming from OFAC.

30. The Treasury Department also invoked a ten day extension to Bacardi's request as allowed by 5 U.S.C. § 552(a)(6)(B).

31. On March 31, 2016, The Treasury Department informed Bacardi that documents would be produced on a rolling basis. No rolling production was made.

32. In that same correspondence, OFAC stated that the Request was in the "search phase." The FOIA Office also informed Bacardi that they had "met with the components within OFAC who are like [sic] to have responsive records and have asked them to push records forward as they are located."

33. Bacardi continued to regularly inquire into the status of the production and was repeatedly assured that documents were being collected and reviewed. No documents were produced.

34. In June 2016, Bacardi was notified that OFAC had "moved ahead on the search for responsive records" and the Request was now in the "review phase." OFAC also noted that pursuant to the submitter notice process under 31 C.F. R § 1.6, the production of documents may be delayed an additional thirty days. Again, no documents were produced.

35. Months later, FOIA analyst Selena Robinson notified Bacardi that an initial batch of roughly 100 documents would be submitted for final review around October 29, 2016. This batch would purportedly be produced to Bacardi in early November 2016.

36. In late November, Ms. Robinson advised that there was a set of processed documents awaiting further review in "counsel's office" and she would check in on the status of that "first interim response." Neither Ms. Robinson, nor anyone else from OFAC, advised Bacardi of the status of these 100 documents. No documents were produced.

37. Over one year after Bacardi submitted the initial Request, on January 29, 2017, Bacardi submitted an administrative appeal based on an effective denial of its Request due to the Treasury Department's excessive year-long delay in responding to the Request.

38. On March 3, 2017, counsel for Bacardi participated in a conference call with an OFAC analyst, counsel for OFAC, and Marshall Fields, the Assistant Director of OFAC's Information Disclosure Division.

39. Bacardi was informed on that call that OFAC could no longer account for the 100 pages of documents previously promised to Bacardi by Ms. Robinson. OFAC had no record that any such documents had been prepared or whether they even existed.

40. On March 1, 2017, Bacardi's administrative appeal was denied because "OFAC [had] not yet issued a determination in response to your request" and "the absence of a response within the time limits specified in the FOIA is not a basis for filing an administrative appeal."

41. On March 17, 2017, OFAC produced its First Interim Release for FOIA Request No. 2016-01-157. This production consisted of a mere thirty-two pages (32) of partially redacted content reflecting only submissions received by OFAC from Cubaexport and its outside counsel. Defendants offered no explanation for why it took over a year to produce thirty-two (32) pages of easily-accessible documents.

42. Worse, Defendants' production contained none of the inter-agency documents requested by Bacardi that would unearth the rationale and motivations behind OFAC's stunning policy reversal and the unprecedented speed of the USPTO action regarding the HAVANA CLUB mark.

43. For example, Defendants failed to produce any documents reflecting communications between them and the State Department. Upon information and belief, such communications certainly exist because it is the practice of OFAC to seek and obtain the input of the State Department before issuing or denying the type of license at issue here (indeed, OFAC has done so before in this very case).

44. Similarly, Defendants failed to produce any documents reflecting communications with the PTO. Upon information and belief, Defendants and the PTO must have been in close contact because the PTO granted Cubaexport the right to renew its HAVANA CLUB mark only *2 days* after OFAC issued License No. CU-2015¬323837-1, despite having taken no action whatsoever for the prior 10 years on Cubaexport's administrative appeal.

45. Nor did Defendants produce any documents reflecting communications with the White House or any Obama Administration officials. Upon information and belief, such communications are likely to exist given the rapidly changing position of the Obama Administration towards Cuba during the time at issue.

46. Bacardi has exhausted the applicable administrative remedies.

47. The Treasury Department and its Office of Foreign Assets Control have wrongfully withheld the requested records from Bacardi.

## CAUSE OF ACTION

### Violation of FOIA for Wrongful Withholding of Agency Records

48. Plaintiff repeats and realleges paragraphs 1 through 47 above.

49. The Department of the Treasury and the Office of Foreign Assets Control have wrongfully withheld records requested by Plaintiff by failing to comply with the statutory time limit (twenty days in addition to the minor statutorily permitted extensions) for the processing of FOIA requests.

50. Plaintiff has exhausted the applicable administrative remedies with respect to the Treasury Department's wrongful withholding of the requested records

51. The Treasury Department and OFAC have violated their statutory obligation to produce documents in response to Bacardi's valid FOIA request. Worse, the Treasury Department and OFAC have strung Bacardi along with empty promises of a "rolling production" and "interim releases" of documents—even going as far as to promise a production of one hundred documents only to have those records disappear without explanation. It was only after Bacardi filed an administrative appeal that OFAC produced a mere thirty-two (32) pages of basic, easily accessible documents.

52. Based on OFAC's own representations, the FOIA Office met with "components" *within* OFAC to collect responsive records as early as March 2016. And while the submitter process may justify some delay in reviewing documents from an outside business submitter like Pernod Ricard, it cannot explain the gross delay in the production of internal or inter-agency documents. As such, there is no basis for OFAC's inability to make a full and timely production of internal or inter-agency documents responsive to Bacardi's Request.

12

53. Bacardi's FOIA Request seeks to understand why OFAC reversed its prior decision not to grant a specific license to Cubaexport to renew its HAVANA CLUB registration, a mark stolen from its original owners by the putative Cuban government. Bacardi's FOIA Request seeks to understand how the USPTO was able to rule on a decade-old petition from Cubaexport a mere two days after OFAC issued its decision to grant the specific license, including to uncover whether there was coordination between the agencies and whether there was political or other pressure from the White House or State Department.

54. Defendants cannot deny Bacardi a remedy by continually claiming that they are still in the process of responding to Bacardi's Request. Given the excessive delay of over a year and a half and the meager production of documents which only followed Bacardi's administrative appeal, Bacardi is entitled to a judgement from this Court ordering Defendants to make a full and complete production in response to the Request within 14 days or some other reasonable date set by the Court.

## **REQUESTED RELIEF**

WHEREFORE, Bacardi respectfully requests that this Court:

1. Order Defendants to conduct a thorough search for all responsive records;

2. Order Defendants to make the requested information available to Plaintiff within 14 days of such Order;

3. Award Bacardi reasonable attorney fees and other costs under 5 U.S.C. § 552(a)(4)(E)(i)-(ii); and

4. Grant such other relief as the Court may deem appropriate in the circumstance.

Dated: September 6, 2017

Respectfully submitted,

/s/ Mark Robeck
Mark Robeck (D.C. Bar No. 1010428)
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
350 K. Street, NW
Washington, DC 20007-5108
(202) 342-8400
mrobeck@kelleydrye.com

Michael C. Lynch (*pro hac vice* forthcoming)
Damon Suden (*pro hac vice* forthcoming)
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800
mlynch@kelleydrye.com
dsuden@kelleydrye.com

4834-7704-4554