**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BACARDI & COMPANY LIMITED, and BACARDI U.S.A., INC., <br><br> *Plaintiffs,* <br><br> v. <br><br> U.S. DEPARTMENT OF THE TREASURY and its Office of Foreign Assets Control, <br><br> *Defendants*. | Civil Action No. 17-1828 (CKK) |

**BACARDI'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS AND BACARDI'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS CROSS-MOTION**

Pursuant to Local Rule 7(h), Plaintiffs Bacardi & Company Limited and Bacardi U.S.A. Inc. ("Plaintiffs" or "Bacardi") submit this Response to Defendants' Statement of Material Facts and Bacardi's Statement of Facts in Support of its Cross-Motion.

**RESPONSE TO DEFENDANTS' STATEMENT**

The paragraph numbers for these Responses refer to the corresponding numbers in Defendants' Statement.

1.      On or about January 19, 2016, Bacardi submitted to the Department and OFAC the Freedom of Information Act ("FOIA") request underlying this matter (the "Request"). Compl. (ECF No. 1) ¶ 28.

**RESPONSE**: Admitted.

2.      In the Request, Bacardi asked the Department and OFAC to release the following records:

1.      All documents, communications, and files maintained by the U.S. Treasury Department or its Office of Foreign Assets Control ("OFAC"), including any communications concerning or involving the U.S. Patent and Trademark Office ("PTO"), U.S. Department of State, Executive Office of the President of the United States, the National Security Council, and/or any other third parties, including without limitation Pernod Ricard and its parents or affiliates ("Pernod"), Havana Club Holdings and its parents or affiliates ("HCH"), Havana Rum & Liquors and its parents or affiliates ("HRL"), relating to the request, issuance, or authorization of License No. CU-2015323837-1 to Empresa Cubana Exportadora de Alimentos y Productos Varios and/or its parents, subsidiaries, affiliates, divisions, or agents ("Cubaexport"), which license was issued to Cubaexport on or about January 11, 2016.

2.      All documents, communications, and files relating to the application or request submitted by Cubaexport to the U.S. Treasury Department and OFAC on or about November 10, 2015, for a specific license relating to the renewal or maintenance of HAVANA CLUB trademark (U.S. Registration No. 1,031,651).

3.      All documents, communications, and files relating to the application or request submitted by Cubaexport to the U.S. Treasury Department and OFAC on or about April 7, 2006, for a specific license relating to the renewal or maintenance of HAVANA CLUB trademark (U.S. Registration No. 1,031,651), and OFAC's subsequent denial of said application or request.

4.      All documents, communications, and files maintained by the U.S. Treasury Department or OFAC, including any communications concerning or involving the U.S. Patent and Trademark Office ("PTO"), U.S. Department of State, Executive Office of the President of the United States, the National Security Council, and/or any other third parties, including without limitation Pernod Ricard and its parents or affiliates ("Pernod"), Havana Club Holdings and its parents or affiliates ("HCH"), Havana Rum & Liquors and its parents or affiliates ("HRL"), relating to the application for renewal of U.S. Registration No. 1,031,651 to the PTO on or about December 13, 2005.

5.      All documents, communications, and files maintained by the U.S. Treasury Department or its Office of Foreign Assets Control ("OFAC"), including any communications concerning or involving the U.S. Patent and Trademark Office ("PTO"), U.S. Department of State, Executive Office of the President of the United States, the National Security Council, and/or any third

2

parties, including without limitation Pernod Ricard and its parents or affiliates ("Pernod"), Havana Club Holdings and its parents or affiliates ("HCH"), Havana Rum & Liquors and its parents or affiliates ("HRL"), relating to the HAVANA CLUB trademark (U.S. Registration No. 1,031,651) from 2004 to present.

6.    All documents, communications, and files relating to Cubaexport's court action against the U.S. Treasury Department and Office of Foreign Assets Control ("OFAC") filed in the District Court for the District of Columbia in 2006 (Civ. No. 06-cv-01692) and Cubaexport's appeal brought in the United States Court of Appeals for the District of Columbia in 2009 Circuit (No. 09-5196).

7.    All documents, communications, and files relating to any applications, requests or inquiries by Cubaexport, Pernod, HCH, HRL, or any third party for a license from OFAC to authorize, permit or otherwise allow the transfer or assignment of the HAVANA CLUB trademark (U.S. Registration No. 1,031,651), from 1997 to present.

8.    All documents, communications and files relating to the bases, reasons, grounds and/or policy initiatives underlying or supporting OFAC's decision to grant License No. CU-2015-323837-1 to Cubaexport, including any communications or files concerning the Foreign Assistance Act of 1961, Trading with the Enemy Act of 1962, Cuban Democracy Act of 1992, and the Cuban Liberty and Democratic Solidarity ("LIBERTAD") Act of 1996, and/or Trade Sanctions Reform and Export Enhancement Act of 2000, and any regulations, rules, policies or guidance relating thereto

Compl. ¶ 28; Fields Decl. Ex. A, US Ex. 1.

**RESPONSE**: Admitted.

A.    **Background and Processing Overview.**

3.    After receiving the Request, the Department referred the Request to OFAC for processing on February 1, 2016.  Letter of 3/17/2017, US Ex. 7.

**RESPONSE**: Bacardi admits that the March 17, 2017 letter states that the Request was referred by the Department to OFAC on February 1, 2016 but lacks knowledge or information as to whether the letter is accurate.

3

4.      Thereafter, OFAC and Bacardi exchanged a series of communications while OFAC reviewed the Request and began to search for responsive records.  *See* Compl. ¶¶ 29-40.

>   **RESPONSE:** Admitted that OFAC and Bacardi exchanged a series of communications after OFAC received the Request, but Bacardi is without knowledge or information sufficient to form a belief as to the truth of the rest of the statement and so denies it.

5.      During those exchanges, Bacardi agreed that Defendants need not produce "public records or documents filed with the court in cases related to the trademark action"—namely, the cases identified in Paragraph No. 6 of the Request. *Id.* ¶ 29.

>   **RESPONSE:** Admitted.

6.      On March 17, 2017, before Bacardi filed this suit, Defendants commenced their releases of records responsive to the Request, releasing 32 pages of records with certain redactions under FOIA Exemption 6.  Letter of 3/17/2017, US Ex. 7.

>   **RESPONSE:** Admitted that Defendants commenced their release of records on March 17, 2017, before Bacardi filed this suit but only after Bacardi filed an administrative appeal.  (Lynch Decl. ¶¶41-42.)

7.      The parties continued discussions regarding the Request with Bacardi on November 14, 2017, agreeing to exclude from its Request records solely responsive to Paragraph No. 6 of the Request.  Jt. Status Rep. of 12/4/2017 (ECF No. 25).

>   **RESPONSE:** Admitted.

8.      Defendants completed their principal releases of records in the Fall of 2019.  *See* Jt. Status Rep. of 11/25/2019 (ECF No. 52); Fields Decl. ¶¶ 35-43, US Ex. 1.

**RESPONSE:** Denied that Defendants completed their release of records in Fall of 2019.  Defendants continued to release documents on May 14, 2020, June 18, 2020 and June 19, 2020. (Lynch Decl. ¶50.)

9.      In processing responsive records, the Department and OFAC referred certain documents to other agencies for consultation, including the Department of State ("State Department"), the Department of Justice's Office of the Solicitor General ("OSG"), the Department of Justice's Civil Division ("Civil Division"), U.S. Patent and Trademark Office ("PTO"), and U.S. Customs and Border Protection ("CBP"). Fields Decl. ¶¶ 37-43, US Ex. 1 (for OFAC and the Department); Stein Decl. ¶ 5, US Ex. 2 (for the State Department); Yancey Decl. ¶¶ 6-9, US Ex. 3 (for OSG); Kelleher Decl. ¶ 2, US Ex. 4 (for the Civil Division); Campbell Decl. ¶ 3, US Ex. 5 (for PTO); Howard Decl. ¶ 5, US Ex. 6 (for CBP).

**RESPONSE:** Bacardi is without knowledge or information sufficient to form a belief as to the truth of the statement.

10.     Although the parties met and conferred in an attempt to narrow the issues for litigation, Defendants understand that Bacardi continues to challenge all aspects of Defendants' response to the Request as modified.  *See* Jt. Status Rep. of 11/25/2019 (ECF No. 52).

**RESPONSE:** Admitted that the parties met and conferred but denied that "Bacardi continues to challenge all aspects of Defendants' response to the Request as modified." Bacardi challenges only the propriety of the redactions and the withholdings. (ECF No. 52 at ¶6.)

**B.      Searches for Responsive Records.**

11.     After receiving Plaintiffs' FOIA request, on February 1, 2016, the OFAC FOIA Administrator reached out to OFAC's Licensing Division to make them aware of the FOIA

5

request and to determine who was involved in the licensing matters referenced in the Request. Fields Decl. ¶ 11, US. Ex. 1.

>    **RESPONSE:** This fact is not material to resolution of the motions for summary judgment. Bacardi is also without knowledge or information sufficient to form a belief as to the truth of the statement. In the event the Court deems this fact material to resolution of the motions, Bacardi requests, pursuant to Fed. R. Civ. P. 56(d)(2), the opportunity to take discovery of and depose OFAC concerning the stated facts.

12.    The Department and OFAC searched the following components for information responsive to the Request: the Licensing Division, the Enforcement Division, the Office of the Chief Counsel for Foreign Assets Control ("OCC" or "Office of Chief Counsel"), OFAC's Acting Director John Smith, and OFAC's Acting Deputy Director Andrea Gacki.  Fields Decl. ¶ 12, US. Ex. 1.

>    **RESPONSE:** This fact is not material to resolution of the motions for summary judgment. Bacardi is also without knowledge or information sufficient to form a belief as to the truth of the statement. In the event the Court deems this fact material to resolution of the motions, Bacardi requests, pursuant to Fed. R. Civ. P. 56(d)(2), the opportunity to take discovery of and depose OFAC concerning the stated facts.

13.    On February 3, 2016, OFAC commenced its search for records responsive to Plaintiffs' Request and received one search response that same day.  Fields Decl. ¶ 13, US. Ex. 1.

>    **RESPONSE:** This fact is not material to resolution of the motions for summary judgment. Bacardi is also without knowledge or information sufficient to form a

belief as to the truth of the statement. In the event the Court deems this fact material to resolution of the motions, Bacardi requests, pursuant to Fed. R. Civ. P. 56(d)(2), the opportunity to take discovery of and depose OFAC concerning the stated facts.

14.     Each division of OFAC maintains its records separately. As the custodians of their own records, and those most knowledgeable about what records they may have and how they maintain them, each division or individual conducts a search based on the manner in which they maintain their records and the records management systems they use.  Fields Decl. ¶ 18, US. Ex. 1.

> **RESPONSE:** This fact is not material to resolution of the motions for summary judgment. Bacardi is also without knowledge or information sufficient to form a belief as to the truth of the statement. In the event the Court deems this fact material to resolution of the motions, Bacardi requests, pursuant to Fed. R. Civ. P. 56(d)(2), the opportunity to take discovery of and depose OFAC concerning the stated facts.

15.     The Licensing Division searched Outlook email and OFAC's case management system, called OASIS, for records responsive to the Request. OASIS stands for "OFAC Administrative System for Investigations and Sanctions." The Licensing Division uses OASIS to store case files and information related to all requests received by the Licensing Division. Licensing conducted an OASIS search using the following terms: "Empresa Cubana Exportadora de Alimentos y Productos Varios," "Cubaexport," "Havana Club," "Pernod Ricard," "Havana Club Holdings," and "Havana Rum & Liquor." The OASIS searches resulted in the location of responsive records. In addition to the OASIS searches, thirty-one members of the Licensing

Division searched their Outlook Email, using at a minimum the following two search terms: "Empresa Cubana Exportadora," and "Cubaexport." Five of the individuals located responsive emails. Finally, an OCC attorney reviewed a box of hard copy Licensing files and located responsive records.  Fields Decl. ¶ 19, US. Ex. 1

> **<u>RESPONSE</u>:** This fact is not material to resolution of the motions for summary judgment. Bacardi is also without knowledge or information sufficient to form a belief as to the truth of the statement. In the event the Court deems this fact material to resolution of the motions, Bacardi requests, pursuant to Fed. R. Civ. P. 56(d)(2), the opportunity to take discovery of and depose OFAC concerning the stated facts.

16.    OFAC's Enforcement Division also conducted a search in OASIS. The Enforcement Division uses OASIS to store records related to sanctions investigations. Enforcement used the search terms "Empresa Cubana," "Cubaexport," "Havana Club," "Pernod Ricard," and "Havana Rum." The searches located one responsive document.  Fields Decl. ¶ 20, US. Ex. 1

> **<u>RESPONSE</u>:** This fact is not material to resolution of the motions for summary judgment. Bacardi is also without knowledge or information sufficient to form a belief as to the truth of the statement. In the event the Court deems this fact material to resolution of the motions, Bacardi requests, pursuant to Fed. R. Civ. P. 56(d)(2), the opportunity to take discovery of and depose OFAC concerning the stated facts.

17.    Four attorneys in the Office of Chief Counsel conducted searches for records. The first attorney searched Outlook and used the following terms: "Pernod," "Bacardi," "Havana

Club," "Cubaexport," "323837," "Exportadora," "1,031,651," "1031651," and "Havana Rum." Using the same search terms, the attorney also searched hard copy files in her office.  Finally, the attorney searched the "Cuba" folder on her personal "H drive," and the Outlook email folder titled "Cuba" on a Treasury classified system to which she has access. The attorney located responsive records, but did not locate any classified records. In her search results response to my office, the attorney noted that she did not search her Cuba litigation Outlook subfolder, since the Plaintiffs' agreed to remove public court filings from the scope of the search, and any remaining records would be attorney work-product and attorney-client privileged protected materials from the litigation.  Fields Decl. ¶ 21, US. Ex. 1

> **RESPONSE:** This fact is not material to resolution of the motions for summary judgment. Bacardi is also without knowledge or information sufficient to form a belief as to the truth of the statement. In the event the Court deems this fact material to resolution of the motions, Bacardi requests, pursuant to Fed. R. Civ. P. 56(d)(2), the opportunity to take discovery of and depose OFAC concerning the stated facts.

18.    The second Office of Chief Counsel attorney searched Outlook using the following search terms: "Pernod Ricard," "Bacardi," "Havana Club," "Cubaexport," "CU-2015-323837," "Exportadora," "1,031,651," "1031651," and "Havana Rum." The attorney also searched the OCC shared "G drive," her personal "H drive," and her hard copy files. The attorney located responsive records.  Fields Decl. ¶ 22, US. Ex. 1

> **RESPONSE:** This fact is not material to resolution of the motions for summary judgment. Bacardi is also without knowledge or information sufficient to form a belief as to the truth of the statement. In the event the Court deems this fact

material to resolution of the motions, Bacardi requests, pursuant to Fed. R. Civ. P. 56(d)(2), the opportunity to take discovery of and depose OFAC concerning the stated facts.

19.     The third Office of Chief Counsel attorney searched Outlook using the following search terms: "Havana Club," "Bacardi," "Pernod," "Ricard," "Cubaexport," and "Exportadora." The attorney located responsive records. The attorney focused his search on items 1, 2, and 8 of the Request, because he determined with respect to the remainder of the request that he would not likely have responsive records, and any records that he would have would be duplicative of records already located by other members of OCC.  Fields Decl. ¶ 23, US. Ex. 1.

> **RESPONSE:** This fact is not material to resolution of the motions for summary judgment. Bacardi is also without knowledge or information sufficient to form a belief as to the truth of the statement. In the event the Court deems this fact material to resolution of the motions, Bacardi requests, pursuant to Fed. R. Civ. P. 56(d)(2), the opportunity to take discovery of and depose OFAC concerning the stated facts.

20.     The fourth Office of Chief Counsel attorney searched Outlook using the following search terms: "Havana Club," "Pernod," "Bacardi," and "Cubaexport." He also searched his "H drive" where he saves all non-email files, and all hard copy files in his office using the same terms. The attorney located responsive records. The attorney noted in his search response that he did not provide documents prepared in connection with the Cubaexport litigation against Treasury (item 6 or "f" of the Request), since the requester was considering withdrawing this portion of the Request.  Fields Decl. ¶ 24, US. Ex. 1.

4819-8697-9524

**RESPONSE:** This fact is not material to resolution of the motions for summary judgment. Bacardi is also without knowledge or information sufficient to form a belief as to the truth of the statement. In the event the Court deems this fact material to resolution of the motions, Bacardi requests, pursuant to Fed. R. Civ. P. 56(d)(2), the opportunity to take discovery of and depose OFAC concerning the stated facts.

21.     OFAC's Policy Division conducted searches on the shared "G" drive, in Outlook, and on classified systems to which the division has access. The following search terms were used: "Ricard," "Bacardi," "Havana Club," "Cubaexport," "CU-2015-323837," "Exportadora," "1,031,651," "1031651," and "Havana Rum." The searches located responsive records. No classified records were located.  Fields Decl. ¶ 25, US. Ex. 1.

**RESPONSE:** This fact is not material to resolution of the motions for summary judgment. Bacardi is also without knowledge or information sufficient to form a belief as to the truth of the statement. In the event the Court deems this fact material to resolution of the motions, Bacardi requests, pursuant to Fed. R. Civ. P. 56(d)(2), the opportunity to take discovery of and depose OFAC concerning the stated facts.

22.     The Regulatory Affairs Division conducted searches in Outlook. The searches located responsive records.  Fields Decl. ¶ 26, US. Ex. 1.

**RESPONSE:** This fact is not material to resolution of the motions for summary judgment. Bacardi is also without knowledge or information sufficient to form a belief as to the truth of the statement. In the event the Court deems this fact material to resolution of the motions, Bacardi requests, pursuant to Fed. R. Civ. P.

56(d)(2), the opportunity to take discovery of and depose OFAC concerning the stated facts.

23.     OFAC's Acting Director searched Outlook, using the search term "Cubaexport." The search located responsive records.  Fields Decl. ¶ 27, US. Ex. 1.

> **RESPONSE:** This fact is not material to resolution of the motions for summary judgment. Bacardi is also without knowledge or information sufficient to form a belief as to the truth of the statement. In the event the Court deems this fact material to resolution of the motions, Bacardi requests, pursuant to Fed. R. Civ. P. 56(d)(2), the opportunity to take discovery of and depose OFAC concerning the stated facts.

24.     OFAC's Acting Deputy Director searched Outlook, using the following search terms: "Pernod Ricard," "Bacardi," "Havana Club," "Cubaexport," "CU-2015-323837," "Exportadora," "1,031,651," "1031651," and "Havana Rum." The search located responsive records.  Fields Decl. ¶ 28, US. Ex. 1.

> **RESPONSE:** This fact is not material to resolution of the motions for summary judgment. Bacardi is also without knowledge or information sufficient to form a belief as to the truth of the statement. In the event the Court deems this fact material to resolution of the motions, Bacardi requests, pursuant to Fed. R. Civ. P. 56(d)(2), the opportunity to take discovery of and depose OFAC concerning the stated facts.

25.     Upon completion of the search, each OFAC division provided the records to the FOIA Office in electronic form through the FOIA POC, along with information regarding how the search was conducted, and whether records were located.  Fields Decl. ¶ 29, US. Ex. 1.

4819-8697-9524

**RESPONSE:** This fact is not material to resolution of the motions for summary judgment. Bacardi is also without knowledge or information sufficient to form a belief as to the truth of the statement. In the event the Court deems this fact material to resolution of the motions, Bacardi requests, pursuant to Fed. R. Civ. P. 56(d)(2), the opportunity to take discovery of and depose OFAC concerning the stated facts.

26.     OFAC's Office of Global Targeting is responsible for investigating and designating blocked entities and individuals, matters wholly unrelated to the Request.  Fields Decl. ¶ 30, US. Ex. 1.

**RESPONSE:** This fact is not material to resolution of the motions for summary judgment. Bacardi is also without knowledge or information sufficient to form a belief as to the truth of the statement. In the event the Court deems this fact material to resolution of the motions, Bacardi requests, pursuant to Fed. R. Civ. P. 56(d)(2), the opportunity to take discovery of and depose OFAC concerning the stated facts.

27.     OFAC's Compliance Division maintains records related to violations of OFAC sanctions related to financial institutions and outreach to the financial sector, which are irrelevant to the Request.  Fields Decl. ¶ 31, US. Ex. 1.

**RESPONSE:** This fact is not material to resolution of the motions for summary judgment. Bacardi is also without knowledge or information sufficient to form a belief as to the truth of the statement. In the event the Court deems this fact material to resolution of the motions, Bacardi requests, pursuant to Fed. R. Civ. P.

4819-8697-9524

56(d)(2), the opportunity to take discovery of and depose OFAC concerning the stated facts.

28.     The searches conducted by OFAC located over 14,000 pages of potentially responsive records. Of those pages, OFAC determined that approximately 12,111 pages were not responsive, or duplicates. OFAC processed the approximately 2,545 pages of responsive records to the requester. 1,077 pages were released in full, 740 pages were released in part with redactions made pursuant to FOIA Exemptions 1, 4, 5, 6, and 7(C). 720 pages were withheld in full pursuant to FOIA Exemptions 1, 4, and 5.  Fields Decl. ¶ 44, US. Ex. 1.

> **RESPONSE:** The first three sentences are not material to resolution of the motions for summary judgment. Bacardi is also without knowledge or information sufficient to form a belief as to the truth of the first three sentences. In the event the Court deems these material to resolution of the motions, Bacardi requests, pursuant to Fed. R. Civ. P. 56(d)(2), the opportunity to take discovery of and depose OFAC concerning the stated facts. Bacardi admits that 1,077 pages were released in full, 740 pages were released in part with redactions made pursuant to FOIA Exemptions 1, 4, 5, 6, and 7(C), and 720 pages were withheld in full pursuant to FOIA Exemptions 1, 4, and 5.

**C.     Withholdings.**

29.     The State Department has classified certain records that OFAC identified in its searches and referred to the State Department for consultation. Fields Decl. ¶¶ 46-48, US Ex. 1; Stein Decl. ¶¶ 6-14, US Ex. 2. Defendants have withheld those documents under Exemption 1. *See id.*

> **RESPONSE:** Admitted that certain records were withheld under Exemption 1.

30.     A State Department original classification authority determined: (i) that the documents withheld under Exemption 1 fall with Executive Order 13,526, (ii) that the records pertain to foreign government information or the foreign relations or foreign activities of the United States, and (iii) that releasing those records could be expected to result in damage to national security.  Fields Decl. ¶¶ 46-48, US Ex. 1; *see also* Stein Decl. ¶¶ 6-14, US Ex. 2.

> **RESPONSE:** Bacardi is not challenging the application of Exemption 1 and therefore this statement is not material to resolution of this dispute. Bacardi lacks knowledge or information about whether Exemption 1 applies to the referenced documents.

31.     OFAC withheld in full or in part 22 records under Exemption 4, all of which pertain to OFAC license applications or inquiries made by third parties.  Fields Decl. ¶¶ 49-52, US Ex. 1; *Vaughn* Index at rows 587-89, 593-601, 605, 607, 609, 613, 615-16, 619, 626-28.

> **RESPONSE:** Denied. OFAC withheld 23 records under Exemption 4 but failed to adequately justify such withholdings because it failed to state whether the third parties were provided an assurance that their information would remain secret and for the reasons explained in Bacardi's accompanying memorandum of law. (Bacardi Br. at 22-24.)

32.     Each withholding consisted of privileged or confidential information submitted by those third parties.  Fields Decl. ¶¶ 49-52, US Ex. 1.

> **RESPONSE**: This paragraph states legal conclusions to which no response is required. To the extent a response is required, the paragraph is denied for the reasons explained in Bacardi's accompanying memorandum of law. (Bacardi Br. at 22-24.)

33.     Defendants withheld under Exemption 5 attorney-client privileged records on their own initiative and based on consultations with the State Department, PTO, the Civil Division, and OSG.  *See Vaughn* Index (rows with "ACP" indicated in "Exemptions" column); Fields Decl. ¶¶ 53-55, 62-63, US Ex. 1 (for OFAC and the Department); Stein Decl. ¶¶ 15, 19, US Ex. 2 (for the State Department); Yancey Decl. ¶¶ 10-11, 13, US Ex. 3 (for OSG); Kelleher Decl. ¶¶ 6-9, 14- 19, US Ex. 4 (for the Civil Division); Campbell Decl. ¶¶ 8-10, US Ex. 5 (for PTO).

> **RESPONSE:** Denied that Defendants adequately justified application of Exemption 5 because Defendants do not state with whom the records were shared and for the reasons explained in Bacardi's accompanying memorandum of law. (Bacardi Br. at 14-17.). Bacardi lacks knowledge or information about whether and how Defendants determined to withhold the referenced documents.

34.     Each of the records withheld in full or in part were exchanged with Government attorneys for the purposes of soliciting or providing legal advice to Government clients.  *See id.*

> **RESPONSE**: This paragraph states legal conclusions to which no response is required.  To the extent a response is required, the paragraph is denied because Defendants do not state with whom the records were shared and for the reasons explained in Bacardi's accompanying memorandum of law. (Bacardi Br. at 14-17.)

35.     Defendants withheld documents under Exemption 5 and the work-product doctrine that were prepared in anticipation of litigation, including after consulting with State, PTO, the Civil Division, and OSG. *See Vaughn* Index (rows with "AWP" indicated in "Exemptions" column); Fields Decl. ¶¶ 53-55, 64-65, US Ex. 1 (for OFAC and the

16

Department); Stein Decl. ¶¶ 15, 20, US Ex. 2 (for the State Department); Yancey Decl. ¶¶ 10-

12, US Ex. 3 (for OSG); Kelleher Decl. ¶¶ 6-13, US Ex. 4 (for the Civil Division); Campbell

Decl. ¶¶ 8-10, US Ex. 5 (for PTO).

> **RESPONSE:** Denied that Defendants adequately justified application of
> Exemption 5 because Defendants do not identify who prepared the records, with
> whom the records were shared, whether the records were prepared in the context
> of a particular or contemplated litigation, and for the reasons explained in
> Bacardi's accompanying memorandum of law. (Bacardi Br. at 14-17.). Bacardi
> lacks knowledge or information about whether and how Defendants determined to
> withhold the referenced documents.

36.     OFAC's work-product withholdings include (i) 112 pages of draft briefs after

consulting with OSG, Yancey Decl. ¶¶ 10(i), 12, US Ex. 3; (ii) litigation risk analyses and draft

briefs after consulting with the Civil Division, Kelleher Decl. ¶¶ 6-7, 11-12, US Ex. 4; and (iii)

legal research, communications between counsel exchanged in preparation for civil litigation,

legal analysis memos, and draft briefs on their own accord.  Fields Decl. ¶ 65, US Ex. 1.

> **RESPONSE**: Denied that these documents are subject to withholding under the
> work-product privilege because Defendants do not identify who prepared the
> records, with whom the records were shared, whether the records were prepared
> in the context of a particular or contemplated litigation, and for the reasons
> explained in Bacardi's accompanying memorandum of law. (Bacardi Br. at 14-
> 17.).

37.     Defendants withheld under Exemption 5 and the deliberative process privilege

records and portions of records containing predecisional and deliberative discussions and

drafts on their own initiative and based on consultations with the State Department, PTO, the Civil Division, OSG, and CBP. *See Vaughn* Index (rows with "DPP" indicated in "Exemptions" column); Fields Decl. ¶¶ 53-61, US Ex. 1 (for OFAC and the Department); Stein Decl. ¶¶ 15-18, US Ex. 2 (for the State Department); Yancey Decl. ¶¶ 10-11, 14-15, US Ex. 3 (for OSG); Kelleher Decl. ¶¶ 6-9, 20- 29, US Ex. 4 (for the Civil Division); Campbell Decl. ¶¶ 8-10, US Ex. 5 (for PTO); Howard Decl. ¶¶ 13-15, US Ex. 6 (for CBP).

> **RESPONSE:** Denied that Defendants adequately justified application of Exemption 5 because Defendants do not demonstrate whether factual material was properly segregated for disclosure, do not explain what deliberative process is involved, do not demonstrate whether draft documents or talking points were adopted as the agency position on an issue, and for the reasons explained in Bacardi's accompanying memorandum of law. (Bacardi Br. at 7-14, 24-28.). Bacardi lacks knowledge or information about whether and how Defendants determined to withhold the referenced documents.

38.    OFAC invoked Exemption 5 and the presidential communications privilege to protect certain briefing materials and other communications. *See Vaughn* Index at rows 453, 459; Fields Decl. ¶¶ 53-55, 66-67, US Ex. 1.

> **RESPONSE**: Denied that OFAC met its burden to justify application of Exemption 5 to the referenced documents because Defendants fail to establish that the records relate to presidential decisionmaking and for the reasons explained in Bacardi's accompanying memorandum of law. (Bacardi Br. at 17-18.).

39.     The withheld records "were provided to a presidential advisor—who had broad and significant responsibilities to advise the President on a wide range of matters—pursuant to the advisor's request for information regarding the status of certain trademark disputes. The materials provided by Treasury discuss coordination between Executive Branch agencies and trademark disputes at issue before international trade tribunals."  Fields Decl. ¶¶ 66-67, US Ex. 1.

> **RESPONSE**: This paragraph states legal conclusions to which no response is required.  To the extent a response is required, the paragraph is denied because Defendants fail to establish that the records relate to presidential decision-making and for the reasons explained in Bacardi's accompanying memorandum of law. (Bacardi Br. at 17-18.).

40.     Defendants applied Exemptions 6 and 7(C) to withhold certain portions of records, including based on consultations with the State Department, PTO, the Civil Division, OSG, and CBP. *See Vaughn* Index (rows with "(b)(6)" or "(b)(7)(C)" indicated in "Exemptions" column); Fields Decl. ¶¶ 68-70, US Ex. 1 (for OFAC and the Department); Stein Decl. ¶¶ 21-24, US Ex. 2 (for the State Department); Yancey Decl. ¶¶ 16, US Ex. 3 (for OSG); Kelleher Decl. ¶¶ 30, US Ex. 4 (for the Civil Division); Campbell Decl. ¶¶ 11-12, US Ex. 5 (for PTO); Howard Decl. ¶¶ 16-23, US Ex. 6 (for CBP).

> **RESPONSE:** Denied that Defendants met their burden to justify application of Exemption 6 to the referenced documents because there is no private or personal interest in the names of employees acting in their official capacities as representatives of the federal government and for the reasons explained in Bacardi's accompanying memorandum of law. (Bacardi Br. at 18-21.) Admitted

that certain records were withheld under Exemption 7(c). Bacardi lacks knowledge or information about whether and how Defendants determined to withhold the referenced documents.

41.     The redactions Defendants made under these exemptions included withholdings of lower-ranking employees' names and contact information, individuals' sensitive personally identifying information (e.g., dates of birth and social security numbers), conference call access codes, personal calendar entries, and personally identifying information of third-party individuals. *See id.*

> **RESPONSE**: This paragraph states legal conclusions to which no response is required. To the extent a response is required, the paragraph is denied because there is no private or personal interest in the names of employees acting in their official capacities as representatives of the federal government and for the reasons explained in Bacardi's accompanying memorandum of law. (Bacardi Br. at 18-21.)

**D.      Segregability.**

42.     Defendants released what they could of the responsive records they identified. *See* Fields Decl. ¶ 71, US Ex. 1 (for OFAC and the Department); Stein Decl. ¶ 25, US Ex. 2 (for the State Department); Yancey Decl. ¶ 17, US Ex. 3 (for OSG); Kelleher Decl. ¶¶ 31, US Ex. 4 (for the Civil Division); Howard Decl. ¶ 24, US Ex. 6 (for CBP).

> **RESPONSE:** Denied that Defendants met their burden to justify the segregability of the responsive records they identified because they failed to provide a detailed justification demonstrating that all reasonably segregable information has been released and for the reasons explained in Bacardi's accompanying memorandum of law. (Bacardi Br. at 24-28.)         *          *          *

20

## PLAINTIFFS' FURTHER STATEMENT OF FACTS

**The HAVANA CLUB Trademark**

1.     Bacardi is the owner of the HAVANA CLUB trademark, having purchased the mark and business from its former owner, José Arechabala, S.A. ("JASA").  JASA was a Cuban corporation that owned the mark and produced HAVANA CLUB branded rum until the Cuban revolution in 1960, when the Cuban government, under the leadership of Fidel Castro, seized and expropriated JASA's assets without compensation. *Havana Club Holding, S.A. v. Galleon S.A.*, 203 F.3d 116, 119 (2d Cir. 2000); *Havana Club Holding, S.A. v. Galleon*, S.A., 62 F. Supp. 2d 1085, 1090 (S.D.N.Y. 1999), *aff'd*, 203 F.3d 116 (2d Cir. 2000).

2.     Having stolen JASA's assets, the Cuban government, through an entity known as Empresa Cubana Exportadora de Alimentos y Productos Varios ("Cubaexport"), purported to register the HAVANA CLUB trademark, U.S. Registration No. 1,031,651, in 1976. *Havana Club Holding, S.A. v. Galleon S.A.*, 203 F.3d 116, 120 (2d Cir. 2000).

3.     In 2006, Cubaexport attempted to renew the HAVANA CLUB trademark registration, but was not authorized to pay the filing fee without a specific license from OFAC. On July 28, 2006, OFAC denied Cubaexport's license application because it would be "inconsistent with U.S. policy." Because the application was denied, the filing fee could not be paid, and the registration expired. (Lynch Decl. ¶34, Ex. 21.)

4.     On September 29, 2006 Cubaexport commenced an action in a District of Columbia district court challenging OFAC's determinations. OFAC vigorously and successfully defended its decision through years of court proceedings. *See Empresa Cubana Exportadora De Alimentos y Productos Varios v. United States Department of Treasury, et al.*, 516 F. Supp. 2d

43 (D.D.C. 2007); 606 F. Supp. 2d 59 (D.D.C. 2009); and 638 F.3d 794 (D.C. Cir. 2011), *cert. denied*, 132 S. Ct. 2377 (2012).

5.      Cubaexport also appealed to the Director of the USPTO. That appeal remained pending for almost 10 years, during which time the registration was not removed from the registry. (Lynch Decl. Ex. 23.)

**The January 2016 Reversal and the FOIA Request**

6.      On January 11, 2016, OFAC reversed course and granted License No. CU-2015-323837-1 to Cubaexport. The License purported to authorize Cubaexport to pay the long overdue filing fee from 2006. (Lynch Decl. ¶35, Ex. 22.)

7.      Within two days of this decision, the USPTO granted Cubaexport's 2006 appeal and held that it could retroactively renew its mark. (Lynch Decl. ¶36, Ex. 23.)

8.      One week from the renewal of the trademark registration, on January 19, 2016, Bacardi submitted a FOIA request to Defendants seeking documents regarding the decision to retroactively permit Cubaexport to pay the registration fee on the HAVANA CLUB trademark registration and related issues. (ECF No. 60-13, Def. St. Facts ¶¶1,2.)

**The Parties Met and Conferred Regarding Defendants' Production to the FOIA Request**

9.      On February 12, 2016, OFAC contacted counsel for Bacardi and requested that Bacardi agree to narrow the scope of the FOIA Request by removing public records, court filings related to the trademark action, and attorney-client records in exchange for the documents being produced more quickly.  (Lynch Decl. ¶37, Ex. 24.)

10.      On February 16, 2016, Bacardi agreed that the Request could be narrowed to exclude public records and court filings related to the trademark action. (*Id*.)

11.     On March 29, 2016, Bacardi inquired as to the status of the Request. (Lynch Decl. ⁋38, Ex. 25.)

12.     On March 31, 2016, the Treasury Department informed Bacardi that documents would be produced on a rolling basis but no rolling production was made. (*Id.*)

13.     Bacardi continued to regularly inquire into the status of the production and was repeatedly assured that documents were being collected and reviewed. No documents were produced. (Lynch Decl. ⁋39.)

14.     In June 2016, Bacardi was notified that OFAC had "moved ahead on the search for responsive records" and the Request was now in the "review phase." OFAC also noted that pursuant to the submitter notice process under 31 C.F. R § 1.6, the production of documents may be delayed an additional thirty days. Again, no documents were produced. (Lynch Decl. ⁋40, Ex. 26.)

15.     Over one year after Bacardi submitted the initial Request, on January 29, 2017, Bacardi submitted an administrative appeal based on an effective denial of its Request due to the Treasury Department's excessive year-long delay in responding to the Request. (Lynch Decl. ⁋41, Ex. 27.)

16.     On March 1, 2017, Bacardi's administrative appeal was denied because "OFAC [had] not yet issued a determination in response to your request" and "the absence of a response within the time limits specified in the FOIA is not a basis for filing an administrative appeal." (Lynch Decl. ⁋42, Ex. 28.)

17.     On March 17, 2017, OFAC produced its First Interim Release for FOIA Request No. 2016-01-157. This production consisted of a mere thirty-two pages (32) of partially redacted

content reflecting only submissions received by OFAC from Cubaexport and its outside counsel. (ECF No. 60-12.)

18.     After identifying deficiencies in OFAC's production and after exhausting the applicable administrative remedies, Bacardi brought this action for wrongfully withheld records. (Lynch Decl. P43; *see also* ECF No. 1 at ¶¶42-46.)

19.     On November 14, 2017, Bacardi, at OFAC's request, agreed to drop request 6 of its FOIA Request. (Lynch Decl. P44, Ex. 29.)

20.     On November 14, 2017, OFAC informed Bacardi that it had already completed its search for all documents responsive to the FOIA Request, excluding request 6. (*Id.*)

21.     OFAC did not complain to Bacardi about any other requests. (Lynch Decl. P45.)

22.     OFAC did not raise any defenses in its answer regarding the scope of Bacardi's FOIA Request. (ECF No. 20.)

**Defendants' Productions After the Complaint**

23.     In response to the Complaint, OFAC agreed that it would make rolling productions of documents. (ECF No. 25.)

24.     On December 19, 2017, the Court entered a Minute Order directing Defendants to "make monthly rolling productions to Plaintiff of responsive, non-exempt records by the fourth day of each month, beginning January 4, 2018." (Lynch Decl. P47, Ex. 30.)

25.     On September 9, 2019, Defendants represented that its production of records responsive to Bacardi's January 19, 2016 FOIA Request was complete. (ECF No. 51 P1.)

26.     Defendants made three additional supplemental productions of records following their September 9, 2019 representation on May 14, 2020, June 18, 2020 and June 19, 2020. (Lynch Decl. P50, Exs. 31-33.)

4819-8697-9524

27.     It took Defendants almost four and a half years to complete its production of documents responsive to the January 2016 FOIA Request. (Lynch Decl. ¶49.)

28.     During all of this time, OFAC did not raise any complaints about the scope of the Request or that the Request was vague or overly broad. (Lynch Decl. ¶48.)

Dated: August 17, 2020

Respectfully submitted,

Cameron R. Argetsinger
D.C. Bar #986152
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K. Street, NW
Washington, DC 20007-5108
T: (202) 342-8400
cargetsinger@kelleydrye.com

By: */s/ Michael C. Lynch*
MICHAEL C. LYNCH (*pro hac vice*)
DAMON SUDEN (*pro hac vice*)
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
T: (212) 808-7800
mlynch@kelleydrye.com
dsuden@kelleydrye.com

4819-8697-9524