# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BACARDI & COMPANY LIMITED, and BACARDI U.S.A., INC.,<br><br>*Plaintiffs,*<br><br>v.<br><br>U.S. DEPARTMENT OF THE TREASURY and its Office of Foreign Assets Control,<br><br>*Defendants*. | Civil Action No. 17-1828 (CKK) |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ................................................................ 1

II.  FACTUAL BACKGROUND ................................................................... 3

ARGUMENT ...................................................................................................... 5

I.   DEFENDANTS FAIL TO ESTABLISH THE APPLICABILITY OF VARIOUS
     FOIA EXEMPTIONS AND MUST THEREFORE PRODUCE THE
     WITHHELD MATERIAL IN FULL................................................................ 5

     A.   Defendants Fail To Establish The Deliberative Process Privilege
          (Exemption 5) Over Many Documents................................................ 7

          i.    Unredacted Documents Show That Defendants Improperly
                Withheld Non-Exempt Material ............................................... 8

          ii.   Defendants Fail To Identify The Particular Decision Being
                Deliberated ......................................................................... 9

          iii.  Defendants Improperly Attempt To Withhold Information That
                Post-Dates The Relevant Decision.......................................... 10

          iv.   Defendants Fail To Justify Withholding Alleged "Drafts"...................... 11

          v.    Many Other Documents Are Withheld Without Sufficient
                Explanation ........................................................................ 12

          vi.   Defendants Failed To Justify Withholding "Talking Points" ................. 13

     B.   Defendants Fail To Establish The Existence of Attorney Client and
          Attorney Work Product Privilege (Exemption 5) Over Many Documents.......... 14

     C.   Defendants Fail to Establish the Existence of the Presidential
          Communications Privilege (Exemption 5) Over Two Documents ..................... 17

     D.   Defendants Fail to Justify Redaction of Government Employee Names
          Under Exemption 6 ..................................................................... 18

     E.   Defendants Fail to Establish the Existence of Third Party Trade Secret
          Protection (Exemption 4) over Twenty-Three Documents............................. 22

III. DEFENDANTS HAVE NOT DEMONSTRATED THAT THE WITHHELD
     DOCUMENTS DO NOT CONTAIN REASONABLY SEGREGABLE NON-
     EXEMPT INFORMATION......................................................................... 24

IV.  BACARDI'S REQUEST IS PROPER IN SCOPE AND SPECIFICITY, AND
     DEFENDANTS HAVE WAIVED ANY OBJECTIONS TO THE REQUEST ............. 28

CONCLUSION.......................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Civil Liberties Union of Massachusetts, Inc. v. U.S. Immigration & Customs Enf't*,
No. CV 19-10690-LTS, 2020 WL 1429882 (D. Mass. Mar. 24, 2020) .................................14

*Am. Oversight v. Office of Mgmt. & Budget*,
No. 18-CV-2424 (DLF), 2020 WL 1536186 (D.D.C. Mar. 31, 2020) ..................................17

*Armstrong v. Exec. Office of the President*,
97 F.3d 575 (D.C. Cir. 1996) ..........................................................................................25, 27

*Besson v. U.S. Dep't of Commerce*,
No. 18-CV-02527 (APM), 2019 WL 8267696 (D.D.C. Oct. 9, 2019) ...................................23

*Cable News Network, Inc. v. Fed. Bureau of Investigation*,
271 F. Supp. 3d 108 (D.D.C. 2017) ....................................................................................30

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec.*,
648 F. Supp. 2d 152 (D.D.C. 2009) ....................................................................................25

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) ........................................................................................7, 14

*Comptel v. F.C.C.*,
910 F. Supp. 2d 100 (D.D.C. 2012) ....................................................................................24

*Conservation Force v. Jewell*,
66 F. Supp. 3d 46 (D.D.C. 2014), *aff'd*, No. 15-5131, 2015 WL 9309920
(D.C. Cir. Dec. 4, 2015) ...............................................................................................9, 14

*\*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*,
436 F. Supp. 3d 90 (D.D.C. 2019) ..............................................................................7, 22, 23

*Ctr. for Pub. Integrity v. United States Dep't of Commerce*,
401 F. Supp. 3d 108 (D.D.C. 2019) ...............................................................................24, 25

*Davy v. C.I.A.*,
357 F. Supp. 2d 76 (D.D.C. 2004) ......................................................................................20

*Defs. of Wildlife v. U.S. Border Patrol*,
623 F. Supp. 2d 83 (D.D.C. 2009) ................................................................................24, 25

*Defs. of Wildlife v. U.S. Dep't of Agric.*,
　311 F. Supp. 2d 44 (D.D.C. 2004) ...................................................................14

*Elec. Privacy Info. Ctr. v. Dep't of Justice*,
　511 F. Supp. 2d 56 (D.D.C. 2007) ...................................................................13

*Envtl. Prot. Agency v. Mink*,
　410 U.S. 73 (1973)..............................................................................................7

*Food Mktg. Inst. v. Argus Leader Media*,
　139 S. Ct. 2356 (2019).......................................................................................23

*Freedom Watch, Inc. v. C.I.A.*,
　895 F. Supp. 2d 221 (D.D.C. 2012) .................................................................30

*Freedom Watch, Inc. v. Dep't of State*,
　925 F. Supp. 2d 55 (D.D.C. 2013) ...................................................................30

*Gellman v. Dep't of Homeland Sec.*,
　No. 16-CV-635 (CRC), 2020 WL 1323896 (D.D.C. Mar. 20, 2020)........................6

*Gordon v. F.B.I.*,
　388 F. Supp. 2d 1028 (N.D. Cal. 2005) ...........................................................19

*Hall & Assocs. v. E.P.A.*,
　846 F. Supp. 2d 231 (D.D.C. 2012) .................................................................10

*Hall v. Cent. Intelligence Agency*,
　268 F. Supp. 3d 148 (D.D.C. 2017) .................................................................18

*Hall v. Dep't of Justice*,
　552 F. Supp. 2d 23 (D.D.C. 2008) .....................................................................6

*Hunton & Williams LLP v. U.S. Envtl. Prot. Agency*,
　346 F. Supp. 3d 61 (D.D.C. 2018) ...................................................................20

*Judicial Watch, Inc. v. Dep't of Justice*,
　432 F.3d 366 (D.C. Cir. 2005) .........................................................................27

*Judicial Watch, Inc. v. Dep't of Justice*,
　No. CV 17-0832 (CKK), 2019 WL 4644029 (D.D.C. Sept. 24, 2019) ................15

*Judicial Watch, Inc. v. Dep't of the Navy*,
　25 F. Supp. 3d 131 (D.D.C. 2014) ...................................................................21

**Judicial Watch, Inc. v. Food & Drug Admin.*,
　449 F.3d 141 (D.C. Cir. 2006) .....................................................................1, 6

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*,
  841 F. Supp. 2d 142 (D.D.C. 2012) .......................................................................5, 7

*Keys v. Dep't of Homeland Sec.*,
  570 F. Supp. 2d 59 (D.D.C. 2008) ..............................................................................21

*Krikorian v. Dep't of State*,
  984 F.2d 461 (D.C.Cir.1993) ......................................................................................24

*Leopold v. Office of Dir. of Nat'l Intelligence*,
  No. CV 16-2517 (CKK), 2020 WL 805380 (D.D.C. Feb. 18, 2020) .....................13

*Masuen v. E.L. Lien & Sons, Inc.*,
  714 F.2d 55 (8th Cir. 1983) .......................................................................................29

*Morley v. C.I.A*,
  508 F.3d 1108 (D.C. Cir. 2007) ...................................................................................6

*Patel v. Bureau of Prisons*,
  125 F. Supp. 3d 44 (D.D.C. 2015) .........................................................................26, 27

*Performance Coal Co. v. U.S. Dep't of Labor*,
  847 F. Supp. 2d 6 (D.D.C. 2012) ...............................................................................21

*Petroleum Info. Corp. v. U.S. Dep't of Interior*,
  976 F.2d 1429 (D.C. Cir. 1992) ...............................................................................7, 8

*Petrucelli v. Dep't of Justice*,
  No. CV 18-0729 (CKK), 2020 WL 1323136 (D.D.C. Mar. 20, 2020)....................20

*Pinson v. United States Dep't of Justice*,
  245 F. Supp. 3d 225 (D.D.C. 2017) ...........................................................................30

*Prison Legal News v. Lappin*,
  780 F. Supp. 2d 29 (D.D.C. 2011) ...............................................................................6

*Prop. of the People, Inc. v. Office of Mgmt. & Budget*,
  330 F. Supp. 3d 373 (D.D.C. 2018) ...........................................................................17

*\*Pub. Employees for Envtl. Responsibility v. Envtl. Prot. Agency*,
  213 F. Supp. 3d 1 (D.D.C. 2016).........................................................................7, 8, 12

*In re Rawson Food Serv., Inc.*,
  846 F.2d 1343 (11th Cir. 1988) .................................................................................29

*Sack v. Cent. Intelligence Agency*,
  53 F. Supp. 3d 154 (D.D.C. 2014) .............................................................................30

*Schlefer v. United States*,
   702 F.2d 233 (D.C. Cir. 1983) ................................................................................14

*Seife v. United States Dep't of State*,
   298 F. Supp. 3d 592 (S.D.N.Y. 2018) ......................................................................29

*Trans–Pac. Policing Agreement v. U.S. Customs Serv.*,
   177 F.3d 1022 (D.C. Cir. 1999) ........................................................................24, 25

*Valfells v. C.I.A*,
   717 F. Supp. 2d 110 (D.D.C. 2010), *aff'd sub nom. Moore v. C.I.A.*, 666 F.3d
   1330 (D.C. Cir. 2011) ..............................................................................................25

*Vaughn v. Rosen*,
   484 F.2d 820 (D.C. Cir. 1973) ...................................................................................6

*Washington Post Co. v. U.S. Dep't of Health & Human Servs.*,
   690 F.2d 252 (D.C. Cir. 1982) .................................................................................19

*\*Wilderness Soc. v. U.S. Dep't of Interior*,
   344 F. Supp. 2d 1 (D.D.C. 2004) ......................................................10, 11, 12, 14

*Zivkovic v. S. California Edison Co.*,
   302 F.3d 1080 (9th Cir. 2002) .................................................................................29

**Statutes**

5 U.S.C. § 552(b) ...................................................................................5, 7, 18, 22, 24

28 C.F.R. § 16.3 .........................................................................................................29

Plaintiffs Bacardi & Company Limited and Bacardi U.S.A., Inc. ("Plaintiffs" or "Bacardi") respectfully submit this memorandum of points and authorities in opposition to Defendants' motion for summary judgment and in support of Plaintiffs' cross-motion for summary judgment.

## I.   PRELIMINARY STATEMENT

Defendants' motion for summary judgment should be denied because they failed to establish a proper basis for redacting or withholding 243 of the 629 documents listed on the Vaughn Index. It is Defendants' burden to "provide[] a relatively detailed justification, specifically identif[y] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006). Defendants have failed to meet this burden.

Defendants' application of the deliberative process privilege under Exemption 5 does not withstand scrutiny because Defendants fail to establish the existence of a genuine predecisional process and the role played by the documents in the course of that process, fail to identify the decision or policy being deliberated, and fail to establish whether draft documents or talking points were adopted as the agency position on an issue. Indeed, in at least two cases, Defendants attempted to withhold information under the predecisional privilege by redacting it in one document while producing the same information without redaction in another. The unredacted information proves that there was no basis for asserting the exemption and calls into question all of the other withholdings.  *See* Argument I(A), *infra*.

Defendants' effort to withhold documents pursuant to the attorney-client communications privilege and attorney work product privilege of Exemption 5 also fails because Defendants do not provide reasonably specific detail regarding whether and with whom the records were shared, whether the records were prepared by or at the direction of an attorney, and whether a specific or contemplated litigation was at issue. *See* Argument I(B), *infra*.

4822-7169-4018

Defendants' application of the presidential communications privilege under Exemption 5 should also not be credited because Defendants fail to show whether the specific redacted and withheld records concern matters of presidential decisionmaking.  *See* Argument I(C), *infra*.

Defendants also improperly redact the names of government employees under Exemption 6 without justification.  FOIA's goal of public disclosure demands production of the names of government employees who are carrying out government work.  Defendants have not established that any personal information is at issue and speculation about harassment is insufficient to defeat FOIA's goal of disclosure.  In at least one case, a name was redacted on the grounds that it was a "low level employee" but the same name was produced in a different document proving that the employee was a "Senior Advisor."  In most cases, however, no information at all is provided about the person who's name is redacted so that Bacardi and the Court are unable to assess whether the exemption is properly applied. *See* Argument I(D), *infra*.

Defendants also seek to withhold information as a trade secret or commercially sensitive information from third parties under Exemption 4 in 23 documents. But Defendants submit no evidence that the provider of the information received any assurance that the information would remain secret, which is an essential element of the exemption. *See* Argument I(E), *infra*.

Defendants also fail to establish, on a document by document basis, that all exempt information has been fully segregated so that non-exempt information could be produced. Boilerplate recitation of the legal standard does not suffice to meet this burden – and that is all Defendants supply. *See* Argument II, *infra*.

Finally, Defendants argue that Bacardi's FOIA Request is too vague and overly broad to be enforced at all. This argument has not been raised at any time in the past 4 years – not when Defendants repeatedly told Bacardi that production would be forthcoming, not in Defendants'

answer to this lawsuit, not when Defendants agreed and the Court ordered that documents should be produced on a rolling monthly basis, not during the ensuing 2 years it took Defendants to make their production, and not in the many months since their final production of documents. To the contrary, Bacardi conferred with Defendants to discuss the Request years ago and again at the outset of this case and agreed to narrow and drop certain requests. On this record, Defendants cannot escape this lawsuit by belatedly arguing that the Requests are too vague or too broad. And, in any event, this issue is moot because Bacardi does not take issue with the adequacy of Defendants' search for documents; rather, Bacardi objects to Defendants' improper withholdings.

Thus, as explained below, because Defendants failed to justify the exemptions for 243 of the documents on the Vaughn Index, Defendants' motion for summary judgment should be denied, Bacardi's cross-motion should be granted, and the challenged documents should be produced in full. Alternatively, the Court should conduct an *in camera* review of the documents.[1]

## II.    FACTUAL BACKGROUND

On January 19, 2016, Bacardi submitted a Freedom of Information Act ("FOIA") request to Defendants (the "Request"). (Pl. St. Facts[2] ¶8.) The Request sought several targeted categories of information, in particular documents regarding: (i) OFAC License No. CU-2015-323837-1 granted on January 11, 2016 to Cubaexport, (ii) Cubaexport's November 10, 2015 application for the license; (iii) the denial of Cubaexport's April 7, 2006 application for a similar license; (iv) Cubaexport's December 13, 2005 application to renew the HAVANA CLUB trademark registration; (v) information in possession of OFAC regarding the trademark; (vi) Cubaexport's

---

[1]    A chart of Bacardi's objections to the exemptions is attached as Exhibit 1 to the Declaration of Michael C. Lynch ("Lynch Decl.") which correlates to the arguments in this memorandum.

[2]    "Pl. St. Facts" refers to Bacardi's Statement of Undisputed Material Facts in Support of its Cross-Motion for Summary Judgment, filed herewith.

lawsuit against OFAC; (vii) applications for a license to transfer ownership of the trademark; and (viii) the reasons for granting License No. CU-2015-323837-1. (Pl. St. Facts ¶8; ECF No. 60-13, Def. St. Facts ¶¶1,2.)

A month after submitting the Request, Bacardi agreed to narrow it further by dropping any request for public records and court filings, in exchange for OFAC's promise that documents would be produced more quickly. (Pl. St. Facts ¶9; Lynch Decl. ¶37, Ex. 24.) Despite Bacardi's willingness to compromise, no production followed for over a year. (Pl. St. Facts ¶¶9-17.) On March 31, 2016, Defendants informed Bacardi that documents would be produced on a rolling basis but again no production was made. (Pl. St. Facts ¶12; Lynch Decl. ¶38, Ex. 25.) Bacardi continued to regularly inquire into the status of production and was assured that documents were being collected and reviewed, but no documents were produced. (Pl. St. Facts ¶13; Lynch Decl. ¶39.) In June 2016, Defendants notified Bacardi that they had "moved ahead on the search for responsive records" and  the Request was in the "review phase." (Pl. St. Facts ¶14; Lynch Decl. ¶40, Ex. 26.)  Still, no documents were produced. It was not until March 2017 – months after Bacardi filed an administrative appeal – that OFAC produced any documents, and even then it produced just 32 pages. (Pl. St. Facts ¶17.) After that, OFAC did not produce a single other documents until this litigation began and it was ordered to do so by this Court.

After Bacardi filed this lawsuit, Bacardi again met and conferred with counsel for OFAC and agreed to further modify the Request by dropping request 6 entirely. (Pl. St. Facts ¶19; Lynch Decl. ¶44, Ex. 29.)  At that time, counsel for OFAC informed Bacardi that it had already completed its search for all documents responsive to the Request, excluding item 6. (Pl. St. Facts ¶20; Lynch Decl. ¶44, Ex. 29.) Defendants never claimed, until this motion, that any other part of the Request was overly broad, vague, or too burdensome. (Pl. St. Facts ¶¶21-22, 28; Lynch Decl. ¶¶45, 48.)

No such defense is mentioned in Defendants' answer to this lawsuit. (Pl. St. Facts ¶22.) In fact, rather than oppose Bacardi's demand for documents, Defendants agreed and this Court ordered that they should fulfill the Request and produce responsive documents. (ECF Nos. 24, 25)

On December 19, 2017, the Court ordered Defendants to "make monthly rolling productions to Plaintiff of responsive, non-exempt records by the fourth day of each month, beginning January 4, 2018." (Pl. St. Facts ¶24; Lynch Decl. ¶47, Ex. 30.) Defendants subsequently made 17 productions over almost 2 and a half years, between December 5, 2017 and June 19, 2020. (Lynch Decl. ¶46.)  During that period, Defendants did not object to the scope of Bacardi's Request or complain that it was too vague or overly broad. (Pl. St. Facts ¶28; Lynch Decl. ¶48.)

On June 19, 2020, Defendants produced a Vaughn Index listing 629 documents, consisting of 740 pages released in part with redactions and 720 pages withheld in full, together with various declarations purporting to justify those FOIA exemptions. (ECF No. 60-1 ¶44; ECF No. 60-6.) As explained below, 243 of the exemptions are unsubstantiated and should be produced or reviewed *in camera*.  For the Court's convenience, Bacardi annotated the Vaughn Index with its objections to each exemption by using a numerical code, as explained in the Lynch Declaration. (Lynch Decl. ¶¶3-14, Ex. 1.)  Only certain illustrative examples are discussed in this memorandum, but the same arguments apply to each similar document on the Index as indicated in Exhibit 1.

## ARGUMENT

I.  **DEFENDANTS FAIL TO ESTABLISH THE APPLICABILITY OF VARIOUS FOIA EXEMPTIONS AND MUST THEREFORE PRODUCE THE WITHHELD MATERIAL IN FULL**

An agency may withhold documents responsive to a FOIA request only if the responsive documents fall within one of nine enumerated statutory exemptions. *See* 5 U.S.C. § 552(b); *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 152 (D.D.C. 2012). On this motion for summary judgment, the court must review whether Defendants improperly

withheld documents *de novo* and "may examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions". 5 U.S.C. § 552(a)(4)(B).

Defendants "bear[] the burden to establish that its claimed FOIA exemptions apply to each document for which they are invoked." *Gellman v. Dep't of Homeland Sec.*, No. 16-CV-635 (CRC), 2020 WL 1323896, at *2 (D.D.C. Mar. 20, 2020) (citations omitted). The agency must provide a detailed description of the information withheld through the submission of a so-called "Vaughn Index," sufficiently detailed affidavits or declarations, or both. *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973). The Vaughn Index and/or accompanying affidavits must "provide[] a relatively detailed justification, specifically identif[y] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006) (quoting *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).

The agency should "disclose as much information as possible without thwarting the exemption's purpose." *Hall v. Dep't of Justice*, 552 F. Supp. 2d 23, 27 (D.D.C. 2008) (*quoting King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C.Cir. 1987)). Conclusory and generalized allegations of exemptions are unacceptable. *Morley v. C.I.A*, 508 F.3d 1108, 1114-15 (D.C. Cir. 2007) (citations omitted); *see also Vaughn*, 484 F.2d at 826.

Defendants have failed to satisfy their burden on this motion to describe the justifications for nondisclosure with "reasonably specific detail" and demonstrate that they have released all non-exempt material in response to Bacardi's Request. *Prison Legal News v. Lappin*, 780 F. Supp. 2d 29, 35 (D.D.C. 2011) (citations omitted). This is particularly true in light of FOIA's "dominant

objective" – which is "disclosure, not secrecy" – and because exemptions must be narrowly construed. *Judicial Watch, Inc v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 152 (D.D.C. 2012) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). The Court should therefore deny Defendants' motion for summary judgment, and grant Bacardi's cross-motion.

A.      **Defendants Fail To Establish The Deliberative Process Privilege (Exemption 5) Over Many Documents**

Exemption 5 of FOIA exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court has recognized that Exemption 5 is to be construed "as narrowly as consistent with efficient Government operation." *Envtl. Prot. Agency v. Mink,* 410 U.S. 73, 87–89 (1973*)*. The deliberative process privilege only applies if the documents are both predecisional and deliberative. *Pub. Employees for Envtl. Responsibility v. Envtl. Prot. Agency*, 213 F. Supp. 3d 1, 11 (D.D.C. 2016). Defendants fail to meet their burden to prove the existence of the privilege as to many documents.

For a document to be predecisional, the agency must demonstrate that it is a direct part of the decision-making process in that it makes recommendations or expresses opinions on legal or policy matters to be decided by the agency. *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.,* 436 F. Supp. 3d 90, 100–01 (D.D.C. 2019). The government or agency must establish the existence of a genuine predecisional process by explaining how the decisions at issue are reached in the agency. *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). Even if a document is predecisional, the deliberative process privilege applies only to the 'opinion' or 'recommendatory' portion of the document; not to the factual information contained in the document. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866-67 (D.C. Cir. 1980). The agency must establish what deliberative process is involved, and the role

played by the documents at issue in the course of that process. *Pub. Employees for Envtl. Responsibility*, 213 F. Supp. 3d at 11 (citations omitted).

The agency must also describe the nature of the decisionmaking authority vested in the office or person issuing the document and the positions in the chain of command of the parties to the documents. *Id.* (citations omitted). "At the very least, [the agency] is required to provide the following information for each document at issue: (1) the nature of the specific deliberative process involved, (2) the function and significance of the document in that process, and (3) the nature of the decisionmaking authority vested in the document's author and recipient." *Pub. Employees for Envtl. Responsibility*, 213 F. Supp. 3d at 13.  If the material will not reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating judgment, the deliberative process privilege is inapplicable. *Petroleum Info. Corp.*, 976 F.2d at 1435.

i.      **Unredacted Documents Show That Defendants Improperly Withheld Non-Exempt Material**

Defendants' failure to properly apply the deliberative process exemption is chiefly apparent in several documents where Defendants redacted information on the grounds that it was exempt in one document while producing the same information without redaction in another document. The unredacted document reveals that the claimed exemption does not apply and calls into question all of the other withheld and redacted documents:

- In Documents 65 and 66, OFAC redacted part of a July 6, 2015 email "to protect internal deliberative discussions, internal opinions/recommendations, and attorney client communications." (ECF No. 60-6; Lynch Decl. Exs. 2, 3.) Despite this claimed exemptions, the withheld information is revealed in Documents 114 and 115. It is clear the withheld information has nothing to do with deliberative discussions or internal recommendations: "Bacardi USA is very concerned about the effects of the changes 515.560(c)(3) on the Havana Club trademark in the USA." (Lynch Decl. Exs. 4, 5.)

- Similarly, portions of Document 246 were redacted "to protect pre-decisional and deliberative communications." (ECF No. 60-6; Lynch Decl. Ex. 6.) But the same

> information is un-redacted in Document 179 which reveals that the information is not exempt from disclosure: "Any ideas on what to do with the attached letter from Bacardi regarding Havana Club?" (Lynch Decl. Ex. 7.) This information, redacted in one entry and unredacted in the other, does not reveal the deliberative or policymaking process of an agency and instead, is purely factual.

It is no wonder then that the Fields Declaration attempts to justify the use of the deliberative privilege exemption with broad platitudes about the nature of the privilege rather than detailed discussions of particular documents. (ECF No. 60-1 ¶¶56-57.) Indeed, neither the Fields Declaration nor the Vaughn Index specifically seeks to justify the redactions to Documents 65, 66, or 246. These noted discrepancies, coupled with the lack of detail in the Fields Declaration, calls into question all of the (b)(5) redactions.

### ii.    Defendants Fail To Identify The Particular Decision Being Deliberated

To establish the exemption, Defendants were required but failed to identify a particular decision or policy being deliberated for each withheld document. *Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 60–61 (D.D.C. 2014), *aff'd*, No. 15-5131, 2015 WL 9309920 (D.C. Cir. Dec. 4, 2015). For example, in Document 131, the (b)(5) redactions are justified by the State Department "to protect predecisional discussions, including an employee's selection of facts relevant to a decision-making process, and attorney/client communications." (ECF No. 60-6; Lynch Decl. Ex. 8.) This justification in the Vaughn Index does not describe the decision or even provide a clue about the decision or policy itself. The accompanying Stein Declaration fares no better as it merely discusses the information withheld by the State Department at a high level as involving "sensitive subjects," the "OFAC decision-making process," "the development of U.S. Government positions on evolving matters related to foreign policy," and "formulating strategies for official action." (ECF No. 60-7 ¶17.)  These meaningless and general descriptions do not provide any specific information about any particular entry on the Index, leaving Bacardi and the Court to guess about what policy or decision is being discussed or debated in each documents on the Index.

This same deficiency applies to a host of other documents listed on the Index, including the example cited above, many of which were withheld in full.  *See* Document Nos. 11, 18, 19, 22, 32, 33, 38, 47, 52, 59, 61, 67, 77, 79, 80, 84, 87, 90, 91, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 112, 117, 120, 121, 123, 124, 125, 126, 131, 138, 155, 156, 166, 191, 193, 195, 196, 198, 199, 200, 211, 212, 214, 244, 246, 253, 254, 264, 265, 268, 275, 277, 283, 287, 289, 291, 294, 324, 338, 339, 341, 345, 350, 360, 361, 365, 369, 371, 414, 417, 418, 428, 437, 444, 445, 453, 459, 460, 473, 474, 475, 481, 483, 485, 487, 489, 491, 492, 496, 497, 498, 499, 500, 501, 502, 506, 507, 508, 509, 510, 515, 522, 538, 558, 563. Because Defendants have failed to justify these withholdings, the documents should be produced in full.

### iii.    Defendants Improperly Attempt To Withhold Information That Post-Dates The Relevant Decision

Several documents appear to post-date a decision and are thus post-decisional and do not meet the deliberative process test. *Hall & Assocs. v. E.P.A.*, 846 F. Supp. 2d 231, 244-45 (D.D.C. 2012). For example, a large portion of Document 350 is redacted and the stated justification is that "OFAC used … (b)(5) to protect pre-decisional and deliberative talking points." (ECF No. 60-6; Lynch Decl. Ex. 9.) The emails in Document 350 are dated January 15, 2016 and January 21, 2016. But the OFAC license at issue was granted on January 11, 2016 to Cubaexport. (ECF No. 1 ¶2.) The emails in Document 350 were drafted *after* the January 11, 2016 decision was made and there is no explanation as to what other or different decisions may have been under consideration to justify the exemption. Because Defendants fail to explain whether these emails were rationalizing or supporting an agency decision, and therefore not subject to protection, or whether they were evaluating and making recommendations on it, which would be subject to protection, Defendants have failed to establish the post-decisional exemption. *Wilderness Soc. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 14 (D.D.C. 2004); *see also Hall & Assocs.*, 846 F. Supp. 2d at 245 (D.D.C.

2012) (finding that postdecisional documents are not covered by the deliberative process privilege because they are "postdecisional in form and timing as well as in content").

Other documents, including Document 350, post-date OFAC's January 11, 2016 decision to grant a license to Cubaexport and Defendants fail to provide any other context or information to justify the withholdings under this exemption. *See* Document Nos. 11, 23, 25, 72, 73, 74, 303, 350, 371, 377, 386, 422, 469. These documents should therefore be produced in full.

### iv.    Defendants Fail To Justify Withholding Alleged "Drafts"

Simply labeling a document as a draft does not automatically establish that the document is predecisional and deliberative. When identifying a document as a draft, the defendant must indicate whether the draft was "(1) 'adopted formally or informally, as the agency position on an issue;' or (2) 'used by the agency in its dealings with the public'" because in either case the draft is not exempt from disclosure. *Wilderness Soc.*, 344 F. Supp. 2d at 14 (citing *Judicial*, 297 F. Supp. 2d at 261). For that reason, "fact sheets and questions and answer sheets do not qualify as deliberative simply by labeling them as drafts" and "factual information which does not bear on the policy formulation is not subject to the deliberative process privilege." *Id.* Here, Defendants have failed to specify why certain alleged drafts are exempt from disclosure.

For example, Document 59 is completely redacted on the grounds that it is a "predecisional draft document containing internal edits, comments and recommendations." (ECF No. 60-6.) The record is described as an "If Asked Q&A on CACR." There is no information about how this document fits into the decisionmaking process or whether the Q&A information was ultimately shared with the press or public – in which case it would not be exempt. The Fields Declaration also fails to provide the required reasonably-specific detail, instead merely asserting – wrongly – that "[b]y their very nature as drafts, these documents are pre-decisional, preliminary versions of

what will later become a final document." (ECF No. 60-1 ¶58.)  This misstatement of the law regarding "drafts" obviously cannot justify the exemption.

Similarly in Documents 117 and 120, the entire page was withheld pursuant to Exemption (b)(5) and the justification provided in the Vaughn Index is that "OFAC used (b)(5) to withhold a predecisional draft document." (ECF No. 60-6.) The record is described as a "Draft letter to Representative Reed Larson letter 1 May2015 response_OFAC_17June2015 jt.docx." This information provides no detail about the decision supposedly under deliberation.  Thus, there is no way for Bacardi or the Court to assess whether the document is predecisional and Defendants have failed to meet their burden.

Other documents, including the examples cited above, also fail to establish that a draft document is predecisional, deliberative, or whether it was ultimately shared with the press or public. *See* Document Nos. 11, 18, 19, 22, 25, 32, 33, 38, 47, 48, 52, 59, 61, 67, 70, 77, 79, 80, 98, 101, 103, 105, 117, 120, 126, 138, 146, 148, 166, 170, 175, 242, 265, 268, 279, 283, 289, 294, 302, 303, 324, 338, 339, 341, 345, 350, 359, 360, 365, 375, 394, 395, 396, 401, 403, 412, 426, 445, 457, 469, 481, 491, 492, 498, 500, 509, 510, 515, 521, 529, 530, 531, 532, 538, 546, 547, 548, 549, 550, 551, 552, 553, 554. Each of these documents should therefore be produced in full.

### v.    Many Other Documents Are Withheld Without Sufficient Explanation

Some descriptions of withheld documents are opaque and fail to allege or demonstrate either factor of the predecisional and deliberative test. *Wilderness Soc.*, 344 F. Supp. 2d at 12–13 (D.D.C. 2004); *Pub. Employees for Envtl. Responsibility*, 213 F. Supp. 3d at 15. In Document 492, for example, Defendants withheld the entire text of the document and justified it by explaining that "OFAC used (b)(5) to protect a pre-decisional and deliberative draft briefing memorandum with hand written edits." (ECF No. 60-6.) This language parrots the test factors but does not provide any context to assess the credibility of the applied exemption. In Document 289, Defendants

withheld the entire text of the document as "a pre-decisional and deliberative, draft internal briefing memorandum, including handwritten edits" but do not identify the particular agency that claimed the deliberative process privilege in the Vaughn Index. (ECF No. 60-6.) Further in Document 394, the Vaughn Index provides no explanation at all for the "USPTO (b)(5)" redaction on the face of the document. (ECF No. 60-6; Lynch Decl. Ex. 10.)

Other documents, including the examples cited above, are similarly withheld on flimsy grounds without sufficient justification. *See* Document Nos. 19, 22, 25, 44, 46, 52, 53, 56, 57, 59, 61, 62, 63, 64, 65, 66, 84, 87, 98, 99, 100, 101, 114, 115, 116, 117, 118, 119, 120, 121, 125, 126, 131, 138, 155, 156, 166, 244, 246, 253, 268, 275, 277, 283, 287, 289, 294, 295, 299, 301, 304, 305, 306, 324, 345, 350, 354, 358, 365, 394, 414, 417, 419, 422, 423, 428, 437, 439, 440, 444, 445, 446, 447, 452, 473, 474, 475, 481, 483, 489, 490, 491, 492, 496, 497, 498, 499, 500, 501, 502, 506, 507, 508, 509, 510, 516, 521, 523, 526, 529, 530, 531, 532, 534, 539, 542, 558. Each of these should also be produced in full.

### vi.    Defendants Failed To Justify Withholding "Talking Points"

Courts have held that "the likelihood" that withheld materials have been relied upon or adopted as official positions after their preparation "is particularly high in the case of 'talking points.'" *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 511 F. Supp. 2d 56, 71 (D.D.C. 2007).[3] Defendants provide no details about the supposed "talking points" they withheld that would allow

---

[3]    *Leopold v. Office of Dir. of Nat'l Intelligence*, No. CV 16-2517 (CKK), 2020 WL 805380, at *6 (D.D.C. Feb. 18, 2020) is distinguishable.  Unlike in *Leopold*, Defendants here have not sufficiently explained the withholding and "must still provide 'context about the particular press-related deliberations at issue and cannot rely solely on conclusory labels'" in order to receive the protection of FOIA Exemption 5. *Id.* (quoting *Am. Ctr. for Law & Justice v. United States Dep't of Justice*, 325 F. Supp. 3d 162, 172 (D.D.C. 2018)).

Bacardi or the Court to assess whether they are truly predecisional and deliberative, or whether they were adopted as official positions or shared with the public (as talking points generally are).

For example, Document 440 was withheld because it was supposedly an "internal briefing document/talking points." (ECF No. 60-6.) The Fields Declaration does not provide any additional detail and actually undermines the supposed exemption by admitting that these briefing documents and talking points were used "for testimony on the Hill and discussions with the press." (ECF No. 60-1 at ¶59.) If it is true that the information in the talking points were conveyed in testimony on the Hill or to the press, then the documents are not exempt and should be disclosed. *Defs. of Wildlife v. U.S. Dep't of Agric.*, 311 F. Supp. 2d 44, 59 (D.D.C. 2004); *see also Am. Civil Liberties Union of Massachusetts, Inc. v. U.S. Immigration & Customs Enf't*, No. CV 19-10690-LTS, 2020 WL 1429882, at \*9 (D. Mass. Mar. 24, 2020). The same is true for other documents conclusorily labeled "talking points," all of which should be produced. *See* Document Nos. 11, 25, 32, 33, 35, 38, 70, 77, 79, 80, 98, 101, 103, 105, 302, 350, 422, 440, 481.

## B.    Defendants Fail To Establish The Existence of Attorney Client and Attorney Work Product Privilege (Exemption 5) Over Many Documents

Exemption 5 also protects attorney-client communications and attorney work-product. *Coastal States Gas Corp.*, 617 F2d at 862. The attorney-client privilege is applicable when the communication from attorney to client is confidential and the communication is based on confidential information provided by the client. *Schlefer v. United States*, 702 F.2d 233, 245 (D.C. Cir. 1983). This privilege is narrowly construed and the dissemination to third parties defeats claims of confidentiality. *Coastal States Gas Corp.*, 617 F.2d at  862-63. Attorney work product privilege protects documents prepared by or at the direction of an attorney in connection with or anticipation of a litigation. *Wilderness Soc.*, 344 F. Supp. 2d at 17-18 (D.D.C. 2004); *see also Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 65-66 (D.D.C. 2014), *aff'd*, No. 15-5131, 2015

WL 9309920 (D.C. Cir. Dec. 4, 2015). The relevant inquiry for the attorney work product privilege is "whether, in light of the nature of the document and the factual situation in a particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, No. CV 17-0832 (CKK), 2019 WL 4644029, at *6 (D.D.C. Sept. 24, 2019) (quoting *Equal Emp't Opportunity Comm'n v. Lutheran Soc. Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999).

Here, Defendants fail to provide reasonably specific detail to justify application of the privileges. For example, in Document 96, Defendants withheld the entire document on the basis of the boilerplate explanation that "DOJ used (b)(5) to protect attorney/client communications, attorney work product, and deliberative communications." (ECF No. 60-6.) The record is described simply as a "Legal Assessment." Defendants do not allege whether an attorney wrote the document, whether the communication is based on confidential information provided by the client, whether there is a particular litigation at issue, and whether it was shared with any third parties such that the privilege would be defeated. The Yancey Declaration does not supplement this Vaughn Index entry with any additional detail either. (ECF No. 60-8 at ¶¶12-13.)

Another problem with Defendants' Vaughn Index is demonstrated by comparing the entries in Documents 65, 66, 114, and 115. (Lynch Decl. Exs. 2-5.) The stated conclusory justification for the (b)(5) redactions is identical across all four documents: "to protect internal deliberative discussions, internal opinions/recommendations, and attorney client communications." (ECF No. 60-6.) The redactions on the face of the documents themselves do not distinguish between the different (b)(5) privileges. Thus, there is no way to assess which portion of the document reflects which justification and, in particular, there is no way to assess which portion reflects the attorney client communication.

Moreover, as noted above, some of the information that is withheld in one of these documents is disclosed in another. For example, Documents 114 and 115 disclosed text that is redacted in Documents 65 and 66: "In short, I am soliciting information on what our position is, if any, re Bacardi USA's concern, and feedback as to whether (Licensing) should schedule a meeting, which would include OCC and Policy at a minimum." (Lynch Decl. Exs. 2-5.) Another portion of the email chain is unredacted in Document 115 but redacted in Documents 65 and 66: "as I believe they both addressed inquiries from Bacardi[4] that were directed to John. I'm not sure if they are both in today, but request that you hold on any response until they can provide some color as to where their last communications with Bacardi stood." Further, a later email in the chain is unredacted in Documents 65 and 66, but redacted in Documents 114 and 115: "I think we responded to a congressional that raised a similar issue, so that might be a good model that we could use to response [*sic*] to this incoming (adding Cheryl[5] in case I'm misremembering on that point)."  In many of these emails, the author and some recipients are also redacted, making it impossible to know whether an attorney was speaking or whether any privileges may have been waived.  These dizzying inconsistencies only serve to undermine any claim that the documents are protected by the attorney-client or work product privileges. The Vaughn Index and the accompanying Fields Declaration do not provide any clarity as to which parts of Exemption 5 apply to the documents.

Without specific document-by-document information regarding the supposed privileges, Bacardi and the Court lack the ability to assess whether the documents were properly withheld.

---

[4]     Further, the "as I believe they both addressed inquiries from Bacardi" language is also redacted as (b)(5) in Document 114 (and Documents 65, 66) but un-redacted in Document 115.

[5]     This reference to Cheryl in the parenthetical is redacted as (b)(6) in Documents 65 and 66 but un-redacted in Documents 114 and 115.

Defendants' failure to establish the attorney client privilege and attorney work product privilege applies to a host of documents.  *See* Document Nos. 20, 47, 48, 65, 66, 72, 73, 91, 96, 102, 104, 106, 107, 114, 115, 116, 118, 119, 123, 131, 157, 160, 175, 191, 193, 195, 196, 197, 198, 199, 211, 214, 253, 254, 296, 297, 321, 337, 338, 341, 369, 435, 515, 524, 525, 527, 528 (supposed attorney client communications privilege); and Document Nos. 93, 94, 96, 97, 99, 100, 112, 296, 297, 435, 517, 527, 528 (supposed attorney work product privilege).

> ### C.    Defendants Fail to Establish the Existence of the Presidential Communications Privilege (Exemption 5) Over Two Documents

Defendants have also improperly withheld documents under the presidential communications privilege aspect of Exemption 5. In particular, Defendants completely redacted and withheld two documents – 453 and 459 – on the basis of this privilege. The records are described as "briefing memorandum" and "internal briefing documentation," respectively. (ECF No. 60-6.) The accompanying Fields Declaration states that the "materials were provided to a presidential advisor – who had broad and significant responsibilities to advise the President on a wide range of matters – pursuant to the advisor's request for information regarding the status of certain trademark disputes." (ECF No. 60-1 at ¶67.) Defendants' justification does not satisfy its burden.

Defendants must demonstrate that the documents were "solicited and received by the President or his immediate White House advisers" and failure to allege that a document relates to presidential decision-making means it is not exempt under the FOIA. *Am. Oversight v. Office of Mgmt. & Budget*, No. 18-CV-2424 (DLF), 2020 WL 1536186, at *6 (D.D.C. Mar. 31, 2020). The "mere fact of communications" between the White House and agency staff "on matters of policy is insufficient to show" that withheld entries concern matters of presidential decisionmaking. *Prop. of the People, Inc. v. Office of Mgmt. & Budget*, 330 F. Supp. 3d 373, 390 (D.D.C. 2018).

Defendants do not explain whether these two documents relate to presidential decisionmaking and as such, they should not be withheld under FOIA Exemption 5.

### D.    Defendants Fail to Justify Redaction of Government Employee Names Under Exemption 6

Defendants overused Exemption 6 to redact the names and identities of government employees on responsive records. (Def. Mot. 23-24.) Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The use of Exemption 6 requires an agency to "prove both the nature of the files and that the files' disclosure would constitute a clearly unwarranted invasion of personal privacy." *Hall v. Cent. Intelligence Agency*, 268 F. Supp. 3d 148, 158 (D.D.C. 2017) (citing *Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599-603 (1982)).

The first prong is met if the information applies to a particular individual and is "personal" in nature and the second prong requires a balance between the protection of an individual's right to privacy and the preservation of the public's right to government information. *Id.* (internal citations omitted). "The 'public interest' in the analysis is limited to the 'core purpose' for which Congress enacted the FOIA, i.e., to 'shed ... light on an agency's performance of its statutory duties.'" *Id.* (citing and quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). Generally, information about federal employees does not qualify for protection and "there must be some personal information that relates to a particular individual for exemption 6 protection to be warranted." *Id.* (collecting cases). The type of information that is usually protected under Exemption 6 includes dates of birth, employment history, and dates of marriage. *Id.*

To meet the second prong of the analysis, the Court must "tilt the balance" of disclosure interests against privacy interests in favor of disclosure because "under Exemption 6, the

presumption in favor of disclosure is as strong as can be found anywhere in the Act." *Washington Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 261 (D.C. Cir. 1982).

Here, Defendants broadly applied Exemption 6 to withhold the names of government employees that were copied on inter-agency and intra-agency correspondence. Bacardi does not contest the use of Exemption 6 to shield conference call access codes or telephone numbers, but rejects Defendants' application of Exemption 6 to withhold "lower-ranking employees' names." (Def. Mot. 24.) The government employees that wrote and received the emails that are redacted were working in their official capacities as representatives of the federal government. "Even assuming the [government employees] have some, slight, privacy interest in keeping their names private and that the appearance of their name alone makes a document a 'similar file' for purposes of exemption 6, revealing the names of government employees who are making important government policy serves FOIA's core purpose of contributing to the public's understanding of how its government operates." *Gordon v. F.B.I.*, 388 F. Supp. 2d 1028, 1041 (N.D. Cal. 2005).

Defendants claim that many redacted names are of "lower-ranking" employees, but as explained above that is not a relevant consideration. Moreover, there are many examples of Exemption 6 redactions that either do not reflect the names of "lower-ranking" employees or are so over-applied that there is no way to evaluate who the relevant decisionmakers are in a document. For example, the comparison between Documents 65, 66, 114, and 115 in *supra* p. 15-16 reflects both the redaction of a senior employee's name and the fact that Defendants were also inconsistent in their use of (b)(6) redactions. (Lynch Decl. Exs. 2-5.) According to Linkedin, Cheryl Carson is a Senior Advisor at the Department of the Treasury, but her name was (b)(6) redacted in Documents 65 and 66. *See* https://www.linkedin.com/in/cheryl-carson-02b62221/ (last visited on July 25, 2020). This is not a "lower-ranking" employee.

Similarly, Document 19 was entirely withheld and the justification is that "OFAC used (b)(6) to withhold employee names and a telephone number." (ECF No. 60-6.) Because the entire text of the document is redacted, Bacardi cannot assess if the (b)(6) exemption was properly applied. The substance of Document 558 is also withheld entirely except for the accompanying fax cover page dated June 18, 1997. (Lynch Dec. Ex. 11.) The fax cover page redacts the name of both the sender and the recipient of the fax. Under these conditions, neither Bacardi nor the Court can assess if either the (b)(5) or the (b)(6) redaction was properly applied.

Defendants rely on a decision that actually supports Bacardi's argument. In *Hunton & Williams*, the court upheld the Army Corps' use of Exemption 6 to redact "conference call numbers and access codes" and upheld the lower court's decision ordering the Army to "release the names" of "government personnel below the level of either general officer or senior executive service" because "the public interest in understanding what the government is up to outweighs the interest of the Army employees in privacy as to the names of the involved employees." *Hunton & Williams LLP v. U.S. Envtl. Prot. Agency*, 346 F. Supp. 3d 61, 86 (D.D.C. 2018).

Defendants' other citations also do not support their position that the lower-ranking employee names should be withheld. (Def. Mot. 23-24.) In *Petrucelli*, the court offered no explanation for why the agency "properly redacted the names of two FBI agents from one documents under FOIA Exemption 6." *Petrucelli v. Dep't of Justice*, No. CV 18-0729 (CKK), 2020 WL 1323136, at *7 (D.D.C. Mar. 20, 2020). In any event, the names of government employees here are not law enforcement agents like FBI agents. In *Davy*, the court upheld the use of Exemption 6 to protect information concerning the names and identifying information of CIA employees because plaintiff failed to demonstrate "how his personal crusade to unearth this information relates in any way to a cognizable public interest." *Davy v. C.I.A.*, 357 F. Supp. 2d 76,

87–88 (D.D.C. 2004). Bacardi is not on a "personal crusade" here but is entitled to gather information about the individuals involved in making the decision to grant the January 2016 license to Cubaexport. The two other decisions cited by Defendants do not discuss Exemption 6 and only address the applicability of Exemption 7(C). *Keys v. Dep't of Homeland Sec.*, 570 F. Supp. 2d 59, 71 (D.D.C. 2008); *Performance Coal Co. v. U.S. Dep't of Labor*, 847 F. Supp. 2d 6, 17–18 (D.D.C. 2012).

Finally, the Stein Declaration's claim that State employees have a speculative privacy interest in "conducting their official duties free from harassment or unwanted interference" without acknowledging the public's interest in understanding who was involved in a major policy reversal is not persuasive and not sufficient to justify withholding employee names. (ECF No. 60-7 ¶23); *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 142 (D.D.C. 2014) (denying defendant's summary judgment motion with respect to Exemption 6 because "while [d]efendant does suggest that the signatories might be subject to 'annoyance or harassment' or become the target of 'harassing inquiries' if their names are released, it says absolutely nothing more about who would engage in such harassment and why this outcome is likely").

Other documents, including the examples cited above, also fail to meet the Exemption 6 test. *See* Document Nos. 19, 20, 23, 44, 46, 47, 48, 63, 65, 66, 72, 73, 74, 91, 93, 94, 97, 99, 100, 102, 104, 106, 107, 112, 114, 115, 116, 118, 119, 121, 123, 124, 125, 126, 131, 155, 156, 160, 181, 191, 193, 195, 196, 197, 198, 199, 200, 211, 212, 214, 242, 244, 246, 249, 253, 254, 268, 337, 350, 359, 361, 369, 371, 376, 377, 383, 386, 394, 422, 428, 447, 558, 559, 563, 565, 591, 592, 619. Each should be produced without the Exemption 6 redactions.

### E.     Defendants Fail to Establish the Existence of Third Party Trade Secret Protection (Exemption 4) over Twenty-Three Documents

Defendants withheld or redacted twenty-three documents on the basis of Exemption 4. Exemption 4 exempts from disclosure "trade secrets and commercial or financial information [that is] obtained from a person and [is] privileged or confidential." 5 U.S.C. § 552(b)(4).  Defendants justified the withholding of this material by referencing OFAC licenses issued to third parties or requests for guidance from third parties. In particular, OFAC used (b)(4) to protect commercial information that it alleges is confidential and/or privileged:

- an OFAC license application from a third party (Documents 587, 589);
- a cover letter to an OFAC license issued to a third party (Document 588);
- a request from a third party for OFAC guidance (Documents 593, 594);
- a license application filed by a third party (Documents 595, 596, 599, 626);
- a license issued to a third party (Documents 597, 598);
- a request for guidance filed by a third party (Documents 600, 601);
- a legal services license request filed by a third party, and (b)(6) to protect a third party signature (Documents 605, 606, 607, 609, 613, 616) (Lynch Decl. Exs. 12 (Doc. 606); 13 (Doc. 607); 14 (Doc. 609); 15 (Doc. 613); 17 (Doc. 616))
- a legal services license issued to a third party, and (b)(6) to protect an employee signature (Documents 615) (Lynch Decl. Ex. 16);
- a letter to OFAC regarding an OFAC license, and (b)(6) to protect a third party signature and Treasury employee names (Documents 619) (Lynch Decl. Ex. 18); and
- a letter from a third party and (b)(6) to protect a third party signature, initials, and name. (Documents 627, 628) (Lynch Decl. Exs. 19-20.)

The provided justifications do not satisfy the Exemption 4 requirements "recently highlighted by the Supreme Court." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 112 (D.D.C. 2019). In *Food Marketing*, the Supreme Court clarified the standard for determining whether information is "confidential" under Exemption 4 and indicated that "two conditions that might be required for information communicated to another to be considered confidential": (i) the provider of information must communicate that the information

is "customarily kept private, or at least closely held" and (ii) the party receiving it "provides some assurance that it will remain secret." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2363 (2019). Although the Supreme Court "stopped short…of deciding that Exemption 4 does in fact impose this requirement," courts in this district have assessed this prong when examining the applicability of Exemption 4. *Ctr. for Investigative.*, 436 F. Supp. 3d at 112; *see also Besson v. U.S. Dep't of Commerce*, No. 18-CV-02527 (APM), 2019 WL 8267696, at *1 (D.D.C. Oct. 9, 2019) ("Perhaps implicit in these statements is the notion that [submitter] customarily keeps private, or at least closely held, the information withheld, and that [submitter] disclosed such information to the agency under an assurance of privacy. But the declarant does not say so expressly, and the court is reluctant to make that inference….Defendant has therefore not met its burden to withhold information under Exemption 4.") Defendants have failed to meet their burden.

First, Defendants cite to 31 C.F.R. § 501.801(b)(6) to argue that OFAC regulations governing licenses "give submitters a reasonable expectation of privacy in the confirmation information they submit." (Def. Mot. 16.) However, the cited regulation only addresses "[l]icense applications submitted to OFAC and specific licenses issued by OFAC", which does not encompass all of the categories of documents withheld on the basis of Exemption 4. 31 C.F.R. § 501.801(b)(6).  For example, the regulation relied on by Defendants does not address cover letters, other letters, or requests for guidance. It is not reasonable for a submitter to assume that their letter or request for guidance will be kept private under this regulation.

Second, in the accompanying Fields Declaration, Defendants refer to *Food Marketing* and explain that the submitters argued that "the documents contained privileged and/or confidential information" and represented that "certain information contained in license applications to OFAC was kept confidential, and not ordinarily disclosed to the public, and/or privileged." (ECF No. 60-

1 at ¶51.) However, Defendants do not explain – either in the Vaughn Index or in the Fields

Declaration – whether OFAC provided assurances that this information would remain secret.

Thus, the Court should deny Defendants summary judgment as to the twenty-three records

withheld or redacted on the basis of Exemption 4, and grant Bacardi summary judgment as to the

same records because Defendants failed to justify their withholdings.

## III.   DEFENDANTS HAVE NOT DEMONSTRATED THAT THE WITHHELD DOCUMENTS DO NOT CONTAIN REASONABLY SEGREGABLE NON-EXEMPT INFORMATION

The law requires that "[a]ny reasonably segregable portion of a record shall be provided to

any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. §

552(b). The government must carry its burden of demonstrating that no reasonably segregable

information exists within withheld documents and the Court must evaluate the agency's Vaughn

index and declarations to determine whether the requisite showing has been made as to each

document. *See Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 90 (D.D.C. 2009) ("To

withhold the entirety of a document, DHS "must demonstrate [to the Court] that it cannot segregate

the exempt material from the non-exempt and must disclose as much as possible."); *see also Ctr.*

*for Pub. Integrity v. United States Dep't of Commerce,* 401 F. Supp. 3d 108, 118-19 (D.D.C. 2019)

(Defendants had not met non-segregability test because Court was unable to evaluate whether any

non-exempt portions were inextricably intertwined with exempt portions where defendants'

declaration and its Vaughn index did not provide a sufficient justification and enough details for

withholding the documents in their entirety); *Krikorian v. Dep't of State*, 984 F.2d 461, 467

(D.C.Cir.1993); *see also Comptel v. F.C.C.*, 910 F. Supp. 2d 100, 114 (D.D.C. 2012).

The court has an "affirmative duty" to consider whether Defendants have satisfied their

segregability obligations. *Trans–Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022,

1028 (D.C. Cir. 1999). Under FOIA, if a record contains some information that is exempt from

disclosure, any reasonably segregable information not exempt from disclosure must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. *Id.* at 1027. An agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." *Valfells v. C.I.A*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010), *aff'd sub nom. Moore v. C.I.A.*, 666 F.3d 1330 (D.C. Cir. 2011) (citation and internal quotation marks omitted); *see also Ctr. for Pub. Integrity*, 401 F. Supp. 3d at 115–16. A "vague and conclusory" affidavit cannot provide a basis for summary judgment on this issue. *E.g., Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec.,* 648 F. Supp. 2d 152, 157–58 (D.D.C. 2009); *see also Defs. of Wildlife*, 623 F. Supp. 2d at 89-90.

Here, Defendants have only provided vague and conclusory allegations. In *Armstrong*, a case cited by Defendants, the government provided adequate explanation for why the exempt material in the withheld documents was not segregable where the government correlated claimed exemptions with particular passages and explained that the document in question could not be further segregated because it discussed sensitive intelligence data throughout. *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578-80 (D.C. Cir. 1996). Here, Defendants give no such explanations – all the government can say is that "Defendants released what they could of the responsive records they identified". (Def. Mot. 25.) In a vague, conclusory, and unpersuasive manner Defendants state that the "sheer number of pages the Government released in full (1,077 pages) compared with pages withheld in part (740 pages) and records withheld in full (720 pages) shows that the Government did not withhold large swaths of information, but instead, applied FOIA's exemptions judiciously to protect only that material that was truly exempt." *Id.* But by the government's own accounting, it withheld far more pages than it produced.

Moreover, the USPTO did not address the segregability factor at all (ECF No. 60-10 (Campbell)) and the rest of the accompanying agency declarations do not discuss any documents with reasonable specificity and simply ask the Court to evaluate this factor based on their say-so. Each declarant merely parrots the standard, but none provides the specific document by document assessment required by the law. *See, e.g.* ECF No. 60-1 (Fields) at ¶71 ("All reasonably segregable information has been released to Plaintiffs..."); ECF No. 60-7 (Stein) at ¶25 ("State determined that no further segregation of meaningful information in the documents could be made without disclosing information warranting protection under the law."); ECF No. 60-8 (Yancey) at ¶17 ("All reasonably segregable information in these documents has been released to the requestor."); ECF No. 60-9 (Kelleher) at ¶31 ("No segregable factual portions have been withheld."); ECF No. 60-11 (Howard) at ¶24 ("I am satisfied that all reasonably segregable portions of the relevant records have been released to the Plaintiff in this matter."). The Yancey Declaration asserts that further detail can be found in the Vaughn Index. *See*, ECF No. 60-8 (Yancey) at ¶17 ("Additional information about the segregability of each withheld document or partially withheld document is provided in the Vaughn Index entry for each document"). But this is not true. The Index does not contain any further specific detail about whether any particular document is segregable.

In fact, this case is more similar to *Patel v. Bureau of Prisons*, 125 F. Supp. 3d 44 (D.D.C. 2015). In *Patel*, the government stated "[e]very effort has been made to provide plaintiff with all reasonably segregable portions of the records requested;" that "[n]o reasonably segregable non-exempt portions of these records have been withheld from Plaintiff;" and that "no further information can be segregated without releasing information properly withheld" under various exemptions. *Id.* at 65. In no way did the government explain, however, *why* any of the withheld documents whose segregability Plaintiff contested could not be further segregated. *Id.* This fact

distinguished the *Patel* case, and this case, from *Armstrong,* where the government justified its

entire withholding of particular pages with non-conclusory, document-by-document explanations.

*See, e.g.*, *Armstrong*, 97 F.3d at 579 (quoting government's assertion that note "consists of an

extensive review of numerous intelligence cables, revealing one piece of specific intelligence after

another"); *id.* at 580 (declaration asserted that specific "sensitive topics 'are discussed throughout

the redacted segment and there are no further intelligible segments which can be segregated'").

For that reason, the court in *Patel* found that there was a genuine issue of material fact as to whether

the documents withheld in their entirety contained reasonably segregable non-exempt information

precluded summary judgment in favor of Defendants. *See Patel*, 125 F. Supp. 3d at 66. This Court

should also deny Defendants' motion for summary judgment where Defendants have provided

only vague and conclusory allegations explaining why the withheld documents do not contain

reasonably segregable, non-exempt information.[6]

In particular, Defendants have failed to provide adequate explanations regarding the

segregability of many documents and the Court should deny Defendants' motion and grant

Bacardi's cross-motion on this basis. *See* Document Nos. 11, 18, 19, 22, 32, 33, 35, 38, 44, 52, 53,

56, 57, 59, 61, 62, 63, 64, 65, 66, 67, 70, 72, 73, 77, 79, 80, 84, 87, 90, 98, 101, 103, 105, 114,

115, 117, 120, 138, 146, 148, 155, 156, 166, 170, 175, 181, 200, 242, 244, 246, 249, 253, 254,

264, 265, 268, 275, 277, 279, 283, 287, 289, 291, 294, 295, 299, 301, 302, 304, 305, 306, 324,

338, 339, 341, 345, 350, 354, 358, 360, 365, 369, 371, 375, 394, 395, 396, 401, 403, 412, 414,

---

[6]     Defendants also cite to *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 371 (D.C. Cir. 2005) for the proposition that they were not required to examine segregability as it applied to its work product withholdings. However, in *Judicial Watch*, the entire contents of the emails in question were prepared in anticipation of litigation, and thus protected by attorney work-product doctrine. 432 F.3d at 370. Moreover, the Court reviewed the documents in question: "Our review of the documents confirms this. Each of the nine documents, in its entirety, is work product. There are no non-work product parts of the emails. In other words, there are no segregable parts." *Id.*

417, 418, 419, 422, 423, 426, 428, 440, 444, 445, 446, 447, 452, 453, 457, 459, 460, 473, 474,

475, 481, 483, 485, 487, 489, 490, 491, 492, 496, 497, 498, 499, 500, 501, 502, 506, 507, 508,

509, 510, 515, 516, 521, 522, 523, 526, 529, 530, 531, 532, 534, 538, 539, 542, 546, 547, 548,

549, 550, 551, 552, 553, 554, 558, 563.

## IV.   BACARDI'S REQUEST IS PROPER IN SCOPE AND SPECIFICITY, AND DEFENDANTS HAVE WAIVED ANY OBJECTIONS TO THE REQUEST

Defendants argue that Bacardi's FOIA Request is "plainly unreasonable and legally

untenable" because "Bacardi's Request here does not reasonably describe the records it seeks."

(Def. Mot. 7, 9.)  This argument is belied by the fact that Defendants spent 4 years reviewing and

producing thousands of pages of documents and with limited exceptions did not complain about

an inability to identify responsive material. In fact, Bacardi engaged in good faith conferences with

Defendants years ago, well before filing suit, and agreed to narrow, limit, and otherwise modify

its FOIA requests. (Pl. St. Facts ⁋⁋9-14; Lynch Decl. ¶¶37-40.) Bacardi agreed to drop request 6

entirely and narrowed other requests to exclude publicly available information and court filings.

(Pl. St. Facts ⁋⁋10, 19; Lynch Decl. ¶¶37, 44.) Based on those concessions, Defendants repeatedly

assured Bacardi that they would review and produce responsive documents both before this lawsuit

was filed and after. (Pl. St. Facts ⁋⁋9-14, 19-20; Lynch Decl. ¶¶38-40, 44.) And Defendants agreed

and the Court ordered that the Request should be complied with and documents should be

produced. (Pl. St. Facts ⁋23; ECF No. 25.) It is simply too late to complain about the Request

almost a year after Defendants made their final production of documents pursuant to the stipulated

order of this Court.

In a footnote, Defendants argue that they did not waive their right to challenge the legal

sufficiency of the FOIA request by failing to plead an infirmity in its answer or by producing

documents. (Def. Mot. 10, n.1.) But this misses the point. Whether in the answer or not, Defendants

did not raise the legal sufficiency or vagueness of the FOIA request at any time prior to this motion and, to the contrary, led both Bacardi and the Court to believe that they were complying with the request and producing responsive materials. In the few cases where Defendants asked Bacardi to narrow or even drop a specific request, Bacardi did so. If there were other objections to the Request, Defendants should have raised them years ago.  On that basis, the Court should reject Defendants' last-minute attempt to raise objections to the Request.

None of the cases cited in support of Defendants' argument involved a challenge to the sufficiency of a FOIA request *after* the production of documents. *Masuen v. E.L. Lien & Sons, Inc.*, 714 F.2d 55, 56 (8th Cir. 1983) (contractual indemnity claim); *Zivkovic v. S. California Edison Co.,* 302 F.3d 1080 (9th Cir. 2002) (disability discrimination claim in violation of the American with Disabilities Act); *In re Rawson Food Serv., Inc.*, 846 F.2d 1343 (11th Cir. 1988) (bankruptcy claim regarding reclamation action).

Defendants also argue that Bacardi's Request is "inadequate" because it seeks "all" documents "relating to" identified subject matters. (Def. Mot. 9.)  Defendants ignore the fact that they were under an obligation to tailor the request with Bacardi if they took issue with its scope. *Seife v. United States Dep't of State*, 298 F. Supp. 3d 592, 611 (S.D.N.Y. 2018) ("to the extent that the State Department determined that the request did not reasonably describe the records being sought, it was under the obligation to engage in a dialogue with Mr. Seife to more appropriately tailor the request, a process that the State Department undertook in connection with the 12996 request."); *see also* 28 C.F.R. § 16.3 ("If after receiving a request a component determines that it does not reasonably describe the records sought, the component shall inform the requester what additional information is needed or why the request is otherwise insufficient."). Defendants newly-

minted objections about the scope and specificity of the Request simply come too late in the day and have been waived.

Finally, Defendants cite to inapposite authority in support of their argument that Bacardi's Request was "invalid *ab initio.*" (Def. Mot. 7-10.) In each of the following decisions cited by Defendants, the requestor did not negotiate with the government prior to filing suit to enforce the terms of a FOIA request. In *Freedom Watch*, plaintiff sued the government for allegedly failing to respond properly to its FOIA requests only one month after submitting the FOIA request. *Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 56–57 (D.D.C. 2013). There is no allegation that the parties engaged in negotiations and discussions prior to the lawsuit. "[Plaintiff] *now* offers to work with Defendant Agencies to narrow its requests.  It did not make such an attempt before it filed suit." *Id*. at 62 (emphasis in original). In *Cable News*, rather than negotiate with defendant regarding the scope of plaintiff's request, plaintiff filed a lawsuit against defendant. *Cable News Network, Inc. v. Fed. Bureau of Investigation*, 271 F. Supp. 3d 108, 110 (D.D.C. 2017).  In *Pinson*, the court held that the FOIA request in question was overbroad and that "[t]his conclusion is bolstered by the fact that Pinson did not clarify her request when the FBI asked for her to do so." *Pinson v. United States Dep't of Justice*, 245 F. Supp. 3d 225, 245 (D.D.C. 2017). In *Sack*, the court noted that  "Plaintiff did not contact the CIA to narrow or modify her request, and never filed an administrative appeal of the CIA's refusal to conduct a search." *Sack v. Cent. Intelligence Agency*, 53 F. Supp. 3d 154, 160 (D.D.C. 2014). Finally, in *Freedom Watch v. CIA*, the court granted defendants' motion to dismiss and noted that at least one agency wrote to plaintiff and asked it to make a new request with more detail – instead, plaintiff sued defendants. *Freedom Watch, Inc. v. C.I.A.*, 895 F. Supp. 2d 221, 226 (D.D.C. 2012).

In any event, as explained above, Bacardi does not take issue with the government's search for responsive material. Rather, Bacardi disputes many of the redactions and withholdings. Thus, the issue on this motion is not whether the government did an adequate job searching for documents, but whether it improperly applied FOIA exemptions. Defendants objections about the specificity or scope of the Requests are irrelevant to that issue.

## **CONCLUSION**

For the foregoing reasons, Bacardi respectfully requests that the Court deny Defendants' motion for summary judgment, grant Bacardi's cross-motion, and order Defendants to produce all of the documents discussed above. Alternatively, Bacardi respectfully requests that the Court conduct an *in camera* review of the documents.

Dated: August 17, 2020

Cameron R. Argetsinger
D.C. Bar #986152
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K. Street, NW
Washington, DC 20007-5108
T: (202) 342-8400
cargetsinger@kelleydrye.com

By: */s/ Michael C. Lynch*
MICHAEL C. LYNCH (*pro hac vice*)
DAMON SUDEN (*pro hac vice*)
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
T: (212) 808-7800
mlynch@kelleydrye.com
dsuden@kelleydrye.com